Argued and submitted February 5, 2004, reversed and remanded August 3, 2005

## Tina M. AGUIRRE,
*Appellant,*

*v.*

## ALBERTSON'S, INC.,
a foreign corporation,
*Respondent.*

0003-03082; A118573

117 P3d 1012

Jacqueline L. Koch argued the cause for appellant. With her on the briefs were Koch & Deering, J. Dana Pinney, and Bailey, Pinney & Associates.

Richard R. Meneghello argued the cause for respondent. With him on the brief was Fisher & Phillips LLP.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

LINDER, J.

## LINDER, J.

Plaintiff, who was employed by defendant Albertson's Inc. (Albertson's) until January 2000, brought this action in circuit court to recover alleged unpaid overtime and termination wages pursuant to Oregon's wage and hour laws and the federal Fair Labor Standards Act (FLSA).[1] Albertson's moved for summary judgment, arguing that plaintiff's claims are precluded by a prior federal judgment in a class action in which plaintiff was a member. The trial court agreed, granted summary judgment for Albertson's, and entered a judgment dismissing the action. Plaintiff appeals. As we explain, we conclude that the federal judgment does not have preclusive effect in this instance and that Albertson's, accordingly, was not entitled to summary judgment. We therefore reverse and remand.

## I. BACKGROUND

Our analysis of the preclusion issue turns significantly on the actions that Albertson's took in its defense of this action while simultaneously defending against and eventually settling the prior federal action. We therefore describe in some detail the procedural events in both cases, which are important for their parallels.

After plaintiff's employment with Albertson's terminated, plaintiff filed this action in state court alleging three claims. Two of those claims—one based on state law and one based on federal law—were for failure to pay overtime wages. *See* ORS 653.261; 29 USC § 216(b). More specifically, those two claims alleged that Albertson's failed to pay plaintiff for so-called "off-the-clock" work—*i.e.*, undocumented overtime work that an employer encourages or requires, but for which no wage or overtime wage is paid. Plaintiff's third claim was closely related to the first two, but was brought under state law only. It alleged that, by not including the wages for the off-the-clock work in plaintiff's final paycheck, Albertson's failed to timely pay plaintiff all wages that were due at her termination. *See* ORS 652.140.

---

[1] *See generally* 29 USC § 216.

Plaintiff served Albertson's with her complaint on March 31, 2000. About one month later, on May 1, 2000, Albertson's removed the case to the federal district court in Oregon, after which Albertson's filed its answer. In response to the removal to federal court, plaintiff voluntarily dismissed her federal (FLSA) claim with prejudice and moved the federal court to remand the case—*i.e.*, the remaining state law claims—to state court. Albertson's did not object. The federal court signed the remand on June 12, 2000, and, two days later, entered a written order returning the case to state court. Within days, plaintiff filed an amended complaint in state court; Albertson's then filed an answer to that amended complaint. Discovery, which had begun while the case was pending in federal court, remained ongoing. The case did not proceed to trial, however. Rather, on June 27, 2000, the circuit court transferred the case to arbitration. As a result, the circuit court proceedings were suspended until the arbitration was completed.

Throughout that time period, and unbeknownst to plaintiff, a putative class action against Albertson's was pending in federal court in Idaho. When Albertson's undertook its defense of this action, it was simultaneously defending that Idaho federal action, which was the outgrowth of multiple actions brought against Albertson's in 1996 and 1997 that later were consolidated and transferred to the Idaho federal court pursuant to the rules for multidistrict litigation (the MDL action).[2] In its consolidated form, the MDL action was a representative one brought on behalf of Albertson's employees in 20 states, including Oregon. Significantly, it involved FLSA wage claims and state law wage claims for off-the-clock work that were essentially identical to the off-the-clock claims that plaintiff had brought in this action in state court.

As this case wound its way from state court, to Oregon federal court, and back to state court again, key procedural events were taking place in the MDL action. By late March 2000, when plaintiff filed her complaint in this case,

---

[2] *See In re Albertson's, Inc. Employment Practices Litigation*, MDL Docket No. 1215, consolidated and transferred to Idaho federal district court pursuant to 28 USC section 1407.

the Idaho federal court had not yet formally certified the class in the MDL action. But only two weeks later, on April 14, 2000, Albertson's and the named plaintiffs in the MDL action signed a proposed settlement agreement. Among other things, the settlement proposed to resolve not only the employees' FLSA-based claim for alleged off-the-clock work, but also any state-law-based claims that those employees might have for that same off-the-clock work. Also, the settlement agreement described which employees were in the potential class for purposes of both the FLSA and state law claims. The proposed class was comprehensive: it consisted of all current and former nonsupervisory employees who worked for defendant in any of several listed states—which included Oregon—during "the period of July 1, 1994 until preliminary approval of the Settlement by the District Court." On June 12, 2000, the Idaho federal court preliminarily approved the settlement agreement. Coincidentally, that preliminary approval occurred on the same day that the Oregon federal court, without objection by Albertson's, approved the remand in this case to state court.

Given those procedural events in the two cases, Albertson's knew, at least as early as when Albertson's removed this case to federal court in Oregon on May 1, 2000, that the MDL action potentially would include plaintiff in the class and could resolve her federal and state law off-the-clock claims alike. Even so, Albertson's did nothing to apprise plaintiff, the Oregon federal district court, or the Oregon circuit court that both actions were simultaneously pending and that plaintiff either was or potentially might be a party to both. Rather, without so much as alluding to the pending MDL action in Idaho, Albertson's removed this case to federal court in Oregon, filed its answer, permitted plaintiff to dismiss her federal claim, voiced no objection to the remand to state court, and then answered plaintiff's amended complaint. Likewise, Albertson's did nothing in the MDL action to notify the Idaho federal court or the MDL Panel overseeing it of the pendency or existence of this action brought individually by plaintiff.[3]

---

[3] As we discuss at greater length later, the rules for multidistrict litigation not only permit but require counsel in such actions to notify the Judicial Panel for Multidistrict Litigation of any potential actions pending in federal district court

After the Idaho federal court preliminarily approved the settlement agreement, the MDL action advanced procedurally towards a final resolution. Notices were sent to all potential class members, informing them of their respective procedural rights and obligations relating to opting in or out of the MDL action. Of particular significance to the issues in this case, the "collective action" procedures of the FLSA applied to the federal wage claims, while the class action procedures of FRCP 23(b)(3) (Rule 23) applied to the state law claims.[4] The class members' procedural rights and obligations therefore differed for the two categories of claims. Key among those differences was that putative class members had to affirmatively "opt in" to the FLSA class to join it, but they were automatically in the Rule 23 state law class unless they affirmatively "opted out." As a result, a potential class member who did nothing—that is, who neither opted in nor opted out—would be a party to the MDL action for purposes of the adjudication of his or her *state* but not *federal* law claims.[5] Under the settlement agreement, the time period for exercising those respective opt-in, opt-out rights expired on August 18, 2000.

Meanwhile, plaintiff remained unaware of the MDL action. A notice of the MDL action was sent to her, but it was not addressed to her then-current address, and she did not receive it. Nor was she otherwise informed of the pending MDL action. By the August 18, 2000, deadline for opting in to the FLSA class or out of the Rule 23 class, plaintiff had done neither.[6] Instead, she continued to litigate her two remaining

that involve questions in common with a multidistrict action. *See* Rules of Procedure, Rules 1.1 and 7.5(e), Judicial Panel on Multidistrict Litigation, 28 USC § 1407 (Panel Rules).

[4] A "collective" action authorized under FLSA technically is not a class action and involves different procedures and legal standards than are in place for Rule 23 class actions. *See generally* 29 USC § 216(b). For present purposes, however, the distinction is not important. Therefore, for ease of reference, we generally refer to the FLSA representative or collective action as a class action and to the represented plaintiffs as class members.

[5] Plaintiff disputes whether a federal court can exercise jurisdiction over the state claims of a potential class member who neither opts in to the FLSA class nor out of the Rule 23 class, and thus challenges the MDL judgment insofar as it purported to bind employees who took no action. We examine and resolve that issue later in this opinion.

[6] Nor could plaintiff have opted in to the FLSA class at that point. By then, without comment about the pending MDL action or objection by Albertson's, she

state wage claims in this action in state court. On September 11, 2000, the Idaho federal court entered a final judgment approving and incorporating the settlement agreement that certified the FLSA and Rule 23 classes solely for purposes of settlement and resolved the state and federal off-the-clock claims of the class members.[7] By then, as earlier noted, the circuit court proceedings in this action had been suspended, and this case was awaiting arbitration. That arbitration eventually was scheduled for April 4, 2001. Shortly before that date—almost seven months after the Idaho federal court issued its final judgment and after MDL class members could no longer avail themselves of the MDL claims process— Albertson's for the first time objected that plaintiff could not pursue her claims in this action because she was a party to the MDL action. Albertson's raised that objection by way of a motion to dismiss. In support of the motion, Albertson's argued that plaintiff was a party to the MDL action because she had not opted out of the Rule 23 class; that plaintiff was bound by the MDL judgment; that the MDL judgment resolved her state law claims; and that the MDL judgment had preclusive effect in this action.

The arbitrator denied Albertson's motion to dismiss. In a letter explaining the denial, the arbitrator observed that Albertson's apparently had complied with the Idaho federal court's order regarding notice to prospective class members, even though plaintiff did not actually receive the notice because it was not sent to her then-current address. In other respects, however, the arbitrator faulted Albertson's

---

had successfully moved in the Oregon federal district court to dismiss her FLSA wage claim with prejudice so that her state wage claims could be remanded to state court.

[7] In brief, the resolution called for class members—*i.e.*, those who opted into the FLSA class or who failed to opt out of the Rule 23 state claim class—to present Albertson's with notice of their claims, postmarked within 30 days of receiving notice of final District Court approval of the settlement, and, after doing so, to provide proof of their claims. If the proof was adequate, Albertson's was obligated to pay a set percentage of the amount owed. It appears that notice of final approval was mailed in early February 2001; thus, class members had to submit notice of their claims by March 2001. Class members who did not do so forfeited the right to receive monetary damages for their claims. In exchange for that claim procedure, class members agreed that their FLSA and state law claims for off-the-clock work were extinguished.

handling of the matter. In particular, the arbitrator found factually that

- Plaintiff made discovery requests to Albertson's that, had Albertson's complied with them, would have resulted in disclosure of the existence of the complaint in the MDL action;

- Albertson's responded untruthfully to plaintiff's discovery requests by stating that plaintiff's request sought "information concerning issues other than those involved in [plaintiff's state court] litigation";

- Albertson's should have produced the MDL complaint for plaintiff;

- If plaintiff had been aware of the MDL action, she would have opted out of the Rule 23 class because the settlement agreement gave her no relief on her state wage claim;[8]

- Albertson's argument that it had no way of knowing whether plaintiff would opt out of the MDL action was "disingenuous under the circumstances";

- Albertson's conduct was inequitable and resulted in plaintiff's failure to opt out within the deadline.

After denying Albertson's motion to dismiss, the arbitrator resolved plaintiff's state law wage claims. The arbitrator concluded that plaintiff's claims were meritorious and, accordingly, ruled in her favor.

Albertson's appealed and, as a result, plaintiff's claims were subject to trial *de novo* in the circuit court. In effect, the previously suspended proceedings before the circuit court resumed. Albertson's moved for summary judgment, raising the same claim preclusion argument that it had made to the arbitrator. In response, plaintiff argued that

---

[8] As earlier described, the class in the MDL action included any current or former employees who worked for defendant in any of several states during "the period of July 1, 1994 until preliminary approval of the Settlement by the District Court." The settlement permitted those class members, however, to recover on claims only for the period of "July 1, 1994 through December 31, 1998 for off-the-clock work." Thus, plaintiff was swept into the class by virtue of her employment with defendant from July 1998 through January 2000, but the settlement agreement permitted her to recover monetary damages for, at most, six months or so of that time period. For the remainder of her employment, her claims were extinguished.

the MDL judgment was void or invalid insofar as her state law claims were involved. Plaintiff reasoned that, because she had not opted in to the FLSA class in the MDL action, the federal court lacked jurisdiction over her *federal* law claims and, therefore, could not exercise *supplemental* jurisdiction over her state law claims. In the alternative, plaintiff argued that Albertson's should not be permitted to rely on issue preclusion as a defense in this case because it had concealed the existence of the MDL action by, among other things, failing to timely disclose to either the state court or the Oregon federal court the existence of the MDL action. In resolving the issue, the trial court acknowledged the novelty of the jurisdictional issue, the unusual posture of the case, and the apparent unfairness of the outcome that Albertson's sought. The trial court determined, however, that claim preclusion principles nevertheless dictated that the MDL judgment be deemed to bar plaintiff's pursuit of this action. The trial court therefore granted summary judgment for Albertson's and dismissed the case.

On appeal, the parties renew the arguments they made below. We first consider plaintiff's challenge to the validity of the MDL judgment. We then turn to whether that judgment should be given claim preclusive effect in this case.[9]

## II. THE VALIDITY OF THE MDL JUDGMENT

At the outset, it is helpful to clarify what plaintiff does not dispute in this case. For starters, plaintiff does not dispute that the Rule 23 class, as described in the settlement agreement in the MDL action and incorporated into the Idaho federal court's judgment, included her. Similarly, she does not dispute that the off-the-clock wage claims that were

---

[9] The arguments that we address are made primarily in plaintiff's first assignment of error and in Albertson's response to it. Plaintiff also raises a second assignment of error challenging Albertson's failure, during discovery, to disclose the existence of the MDL action. Plaintiff argues that, as a result of that failure, Albertson's should not have been permitted to rely on the MDL judgment. To the extent that plaintiff argues those matters in connection with whether preclusive effect should be given to the MDL judgment, we consider her arguments as part of her first assignment of error. To the extent that plaintiff argues that Albertson's committed a discovery violation that was sanctionable as such, the issue is not preserved because plaintiff did not move to compel production or otherwise seek sanctions from the trial court for any discovery violations.

the subject of the MDL action encompassed the same off-the-clock wage claim that plaintiff pursued in this action in state court. Nor, finally, does plaintiff dispute that the settlement agreement in the MDL action purported to be binding on the claims of class members who, like plaintiff, neither opted in to the FLSA class nor out of the Rule 23 class. Thus, there is no dispute that, by the *terms* of the MDL judgment, plaintiff was a party to that litigation and the judgment resolved her state law wage claims.[10]

■ What is in dispute is whether the MDL judgment is valid insofar as it purported to bind plaintiff and to resolve her state law wage claims. Consistently with her position below, plaintiff argues that, because she did not opt in to the FLSA class, she did not place her federal claims before the Idaho federal court and that court, therefore, was deprived of the federal claim predicate that it needed to exercise "supplemental" jurisdiction over her state law claims. Albertson's asserts that, to the contrary, federal courts may exercise supplemental jurisdiction to resolve the state law claims of persons who do not or cannot opt in to the FLSA class, and that the Idaho federal court in fact did so in the MDL action.

The parties' arguments bypass an important threshold issue: Under what circumstances, if any, may a party collaterally attack a prior judgment on the ground that it was beyond the court's jurisdiction to render? We begin with that question because, as the answer to it reveals, the MDL judgment is *not* subject to collateral attack on the ground that plaintiff urges.

■ Plaintiff's challenge to the MDL judgment is premised on what is, in effect, a challenge to that Idaho federal court's subject matter jurisdiction over her state law claims. Axiomatically, "[t]he validity of an order of a federal court depends upon that court's having jurisdiction over both the subject matter and the parties." *Insurance Corp. v.*

---

[10] At most, plaintiff argues that for prudential reasons—*e.g.*, the uncertainty of the Idaho federal court's jurisdiction over non-opt-in class members—we should *construe* the MDL judgment, and the settlement agreement that it incorporated, as not encompassing her claims. We do not understand plaintiff to argue that the express terms of the judgment, literally applied, do not extend to her or to her claims.

*Compagnie des Bauxites*, 456 US 694, 701, 102 S Ct 2099, 72 L Ed 2d 492 (1982). Of the two kinds of jurisdiction—personal and subject matter—subject matter jurisdiction is particularly fundamental, for it "functions as a restriction on federal power, and contributes to the characterization of the federal sovereign." *Id.* at 702. Consequently, subject matter jurisdiction—unlike personal jurisdiction—cannot be conferred on the court by consent or estoppel. *Id.* Nor is a challenge to a trial court's subject matter jurisdiction readily waived. Rather, such a challenge may be raised at any point throughout the proceedings, either by the parties or *sua sponte* by the court (either trial or appellate). *Id.*

But the fact that a court's subject matter jurisdiction is open to challenge throughout the proceedings does not mean that it remains open to collateral attack by a party to the judgment in a subsequent tribunal. To the contrary, for the most part, the door closes soundly against such a challenge once a final judgment has been rendered and the appellate process has been exhausted. At that point, the parties to the case have had a full opportunity to litigate the question of subject matter jurisdiction. Principles of claim preclusion—formerly termed *res judicata*—therefore apply in any subsequent proceeding before a different tribunal. *Id.* at 702 n 9; *Clawson et ux v. Prouty et ux*, 215 Or 244, 250-52, 333 P 1104 (1959) (holding that doctrine of *res judicata* applies to questions of subject matter jurisdiction as well as to jurisdiction over the parties).[11] In other words, the time and place for a party to a case to attack a trial court's subject matter jurisdiction is while the case is pending before that court or before an appellate court on direct appeal of the judgment, not in a later proceeding before a different tribunal.[12]

---

[11] *See also Stoll v. Gottlieb*, 305 US 165, 172, 59 S Ct 134, 83 L Ed 104 (1938) ("After a party has his day in court, with opportunity to present his evidence and his view of the law, a collateral attack upon the decision as to jurisdiction there rendered merely retries the issue previously determined. There is no reason to expect that the second decision will be more satisfactory than the first."); *see generally Restatement (Second) of Judgments* § 12 comment d (1982) ("Even if the issue of subject matter jurisdiction has not been raised and determined, the judgment after becoming final should ordinarily be treated as wholly valid if the controversy has been litigated in any other respect.").

[12] Plaintiff argues that, because she did not receive actual notice of the MDL action, she was not able to avail herself of the appeals process in which to challenge the Idaho federal court's subject matter jurisdiction over her claims. Under federal

The *Restatement (Second) of Judgments* section 12 (1982), however, identifies three exceptions to the general rule that a party to a judgment may not collaterally attack it in a later proceeding for lack of subject matter jurisdiction. They are:

"(1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or

"(2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or

"(3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction."

The second two exceptions are not implicated by plaintiff's arguments in this case, nor would they detain us. For a state court to allow the federal MDL judgment to stand would not substantially infringe on the state court's authority. Rather, the opposite is true—allowing the MDL judgment to be challenged collaterally in a later state court action would substantially infringe on the authority of the Idaho federal court that rendered the judgment. Nor was the Idaho federal court lacking in capability "to make an adequately informed determination." That court, instead, was in the superior position to assess its own subject matter jurisdiction, and it presumably did so.[13]

---

law, however, her rights and interests as a member of the class presumptively were protected by the named plaintiffs and class counsel. Nothing in the record before us suggests that the named plaintiffs and the class counsel of the MDL action failed in that respect. Plaintiff therefore cannot avoid the preclusive effect of the judgment on that basis. *See Epstein v. MCA, Inc.*, 179 F3d 641, 648-49 (9th Cir), *cert den*, 528 US 1004 (1999) (collateral second-guessing of the adequacy of notice and representation in a prior class action is inappropriate).

[13] Federal courts have an obligation to assess their jurisdiction independently of the litigants' assertions. *See, e.g., U.S. v. Ceja-Prado*, 333 F3d 1046, 1049 (9th Cir 2003) ("It is clear, for example, that this court has a continuing obligation to assess its own subject-matter jurisdiction, even if the issue is neglected by the parties entirely or raised for the first time on appeal."). Consequently, a presumption exists that "[e]very court in rendering a judgment, tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter." *Stoll*, 305 US

There remains, however, the first exception—whether the "subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority." That exception frames an issue that differs—subtly, but importantly—from the one that the parties frame. For purposes of plaintiff's collateral challenge to the MDL judgment in this case, the question is not whether the Idaho federal court *in fact* lacked subject matter jurisdiction over plaintiff's state law claims; the question is only whether her state law claims were *plainly beyond* that court's subject matter jurisdiction.

■ Numerous federal courts have been confronted with the jurisdictional issue that plaintiff's challenge presents. The issue arises because a federal court can exercise original jurisdiction only over a federal law claim, such as the FLSA wage claim. *See* 29 USC § 1367(a) (providing for federal question jurisdiction). State law claims are beyond the federal court's jurisdiction, unless they are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy[.]" *Id.* If a state claim satisfies that standard, the federal court, as a discretionary matter, may exercise what is termed "supplemental jurisdiction" (formerly, pendent or ancillary jurisdiction) over the related state law claims. *See generally Mine Workers v. Gibbs*, 383 US 715, 725, 86 S Ct 1130, 16 L Ed 2d 218 (1966) (a federal court can exercise jurisdiction over any state law claims that derive from "a common nucleus of operative fact"). In effect, the federal claim provides the "hook" on which a federal court's supplemental jurisdiction over a related state law claim attaches.

The problem in FLSA and similar "opt in" collective (*i.e.*, class) actions, however, is that the federal law hook may not exist for the state law claims of all class members. As earlier described, potential class members must affirmatively opt in to the action for the judgment to be binding on their federal claims. But the state law claims, if adjudicated through a class action, are controlled by Rule 23 procedures, which require potential class members to affirmatively opt

at 171-72. We should not lightly indulge any suggestion that a federal court has neglected that responsibility.

out of the action. That dichotomy in procedures—the opt-in class structure for the federal claims and the opt out class structure for the related state law claims—poses a jurisdictional conundrum. Does the federal court have jurisdiction over the state law claims of persons who, by failing to opt out of the Rule 23 class, are parties to the litigation, but who either have no federal claim or who failed to place that claim before the court by opting into the federal class? Said another way, can a federal court exercise "supplemental" jurisdiction over a state law claim when the federal jurisdictional "hook" for that claim does not exist or is not before the federal court?

As interesting as that question may be, it is not difficult for our purposes in this case. The clear weight of federal authority holds that federal courts *can* exercise jurisdiction over the state law claims of persons who do not or cannot opt into the federal representative action (such as the FLSA action in this case).[14] At most, the federal precedents divide only on whether and when federal courts appropriately *should* do so in terms of the sound exercise of their *discretion*.[15]

---

[14] *See, e.g., McLaughlin v. Liberty Mut. Ins. Co.*, 224 FRD 304, 308 (D Mass 2004) (deciding within "analytical framework" of Rule 23 that "employee's failure to opt in to the FLSA litigation should not deprive them of their right to pursue a state law remedy through a single class action"); *Goldman v. Radioshack Corp.*, 2003 WL 21250571, at *4-5 (ED Penn Apr 16, 2003) (exhaustively canvassing federal cases; concluding that federal courts have "the power to exercise supplemental jurisdiction over the opt-out plaintiffs who are not opt-in members of the FLSA action"; describing the "clear weight of authority" as "in favor of exercising supplemental jurisdiction" over the Rule 23 class); *Scott v. Aetna Services, Inc.*, 210 FRD 261, 267 (D Conn 2002) (exercising supplemental jurisdiction over state law claims of non-opt-in plaintiffs in FLSA case); *Ansoumana v. Gristede's Operating Corp.*, 201 FRD 81, 95-96 (SDNY 2001) (same).

One contrary authority—and possibly the only one since federal court supplemental jurisdiction was expanded in 1990 (*see* 201 Or App at 45 n 16)—is *Zelaya v. J.M. Macias, Inc.*, 999 F Supp 778, 782-83 (EDNC 1998), where the district court dismissed the state law claims from a FLSA representative action "for lack of jurisdiction." No other federal decision has endorsed *Zelaya's* jurisdictional conclusion. *See Goldman*, 2003 WL 21250571, at *4 ("*Zelaya* has not received a welcomed reception in federal courts" and has not been followed); *Ansoumana*, 201 FRD at 95-96 (observing that *Zelaya* has enjoyed "little resonance" and declining to follow it). *Zelaya* has met with favor by other federal courts only for its discussion of the problems that can arise due to a combined opt-in, opt-out class structure, a factor that other courts have considered in exercising their discretion whether to certify a Rule 23 class. *See* 201 Or App at 44-45 n 15 (discussing cases).

[15] *See, e.g, Hasken v. City of Louisville*, 213 FRD 280, 283-84 (WD Ky 2003) (declining to certify a class of non-opt-in plaintiffs when the "practical effect" of

That current state of federal authority provides a complete answer to plaintiff's collateral challenge to the validity of the MDL judgment. Again, the question before us is not whether the Idaho federal court in fact had jurisdiction over plaintiff's state law claims; it is only whether those claims were "plainly beyond" the court's jurisdiction. *See Restatement* at § 12. That question must be answered "no," given the substantial weight of federal case law holding that federal courts *can* exercise supplemental jurisdiction over such claims, together with the respectable number of cases in which federal courts in fact have done so. We need not decide if those cases are correctly decided or delve into the more difficult nuances of federal court jurisdiction that such an inquiry might entail.[16] Here, it is enough to conclude, as we do, that the Idaho federal court did not plainly lack subject matter jurisdiction over plaintiff's claims. Because it did not,

---

such "would be akin to the minnow swallowing the whale"); *Marquis v. Tecumseh Products Co.*, 206 FRD 132, 162-65 (ED Mich 2002) (noting that 28 USC section 1367(a) does not create a *per se* bar to the court's exercise of supplemental jurisdiction, but nevertheless exercising its discretion under 28 USC section 1367(c)(4) to decline to certify a class of plaintiffs when that class "would result in a handful of individual federal Title VII claims serving as the federal-question jurisdictional anchor for the Court's consideration of the supplemental state-law claims of a much larger class of" plaintiffs).

[16] To explain, one issue posed by the Rule 23 class certification in this case is that of so-called "pendent-plaintiff" jurisdiction, which occurs when "a plaintiff brings a federal claim against a defendant and a second plaintiff brings a factually related state law claim against the same defendant." *Zelaya*, 999 F Supp at 782. In 1989, the United States Supreme Court held that, in the absence of an express grant of congressional authority, a federal court cannot assert supplemental—*i.e.*, pendent—jurisdiction over claims against a *defendant* when the court lacks original jurisdiction over those claims. *Finley v. United States*, 490 US 545, 109 S Ct 2003, 104 L Ed 2d 593 (1989). Congress acted swiftly to provide that express grant of congressional authority. The next year, it enacted the Judicial Improvements Act of 1990, which added 28 USC section 1367 and effectively overruled *Finley*. *See generally Exxon Mobil Corp. v. Allapattah Services, Inc.*, _____ US _____ , _____ , 125 S Ct 2611, 162 L Ed 2d 502 (2005) (slip op at 12) (Ginsburg, J., dissenting) (The Supreme "Court is unanimous in reading § 1367(a) to permit pendent-party jurisdiction in federal-question cases, and thus, to overrule *Finley*."). Section 1367, however, is not limited to pendent defendants, which was what *Finley* involved. That is, by its terms, the statute does not "distinguish between the addition of defendants and the addition of plaintiffs under a court's supplemental jurisdiction." *Marquis*, 206 FRD at 165. The unresolved, but sometimes noted, question is whether, in expanding supplemental jurisdiction to pendent plaintiffs, Congress has gone beyond the constitutional limits of Article III, thus rendering the expansive grant of pendent-plaintiff jurisdiction in the Judicial Improvement Acts invalid. *See id.* (noting the constitutional issue); *Zelaya*, 999 F Supp at 782 (same). No federal court to date, however, has reached the constitutional question or so concluded.

plaintiff may not collaterally attack the MDL judgment in this action.

## III. CLAIM PRECLUSION

 The remaining issue is whether the MDL judgment should be given preclusive effect in this action. To resolve that issue, however, we must first determine whether state or federal law controls.

The general rule is that the preclusive effect to be given to a judgment is determined by the law of the jurisdiction in which the judgment was rendered. *See generally Restatement* at § 86 (state court judgments) and § 87 (federal court judgments). Thus, as a matter of the comity interests reflected in the Full Faith and Credit Clause, federal courts generally are bound by state law when the question is whether they should give preclusive effect to a state court judgment. *See Kremer v. Chemical Construction Corp.*, 456 US 461, 482, 102 S Ct 1883, 72 L Ed 2d 262 (1982); *see also San Remo Hotel, L. P. v. City and County of San Francisco*, ____ US ____ , ____ , 125 S Ct 2491, 162 L Ed 2d 315 (2005) (discussing comity principles). Likewise, state courts generally are bound by federal law in determining the preclusive effect of federal court judgments. *See Heck v. Humphrey*, 512 US 477, 488 n 9, 114 S Ct 2364, 129 L Ed 2d 383 (1994) (so stating); *see Restatement* at § 87 (same). As a practical matter, however, preclusion principles "as expounded in state and federal courts" often reflect few or no differences, so that it is "usually a moot question whether the effect of a federal judgment is determined by federal law or state law." *Restatement* at § 87 comment a. That appears to be true in this instance as well. We therefore cite both federal and Oregon authorities in our discussion.[17]

---

[17] We cite Oregon authority in an exercise of caution. Other cases decided by this court and the Oregon Supreme Court similarly have involved the preclusive effect of a federal judgment in state court. But none appears to have identified the "choice of law" issue that circumstance presents and the cases have analyzed the preclusive effect of a prior federal judgment generally pursuant to Oregon, rather than federal, law. *See, e.g., Rennie v. Freeway Transport*, 294 Or 319, 328, 656 P2d 919 (1982); *Secor Investments, LLC v. Anderegg*, 188 Or App 154, 71 P3d 538, *rev den*, 336 Or 146 (2003); *Durham v. City of Portland*, 181 Or App 409, 45 P3d 998 (2002).

█ The claim preclusion doctrine that Albertson's invoked below, and that resulted in summary judgment in Albertson's favor, reflects the familiar idea that a party who has litigated her claim to completion is not entitled to a "second bite of the apple." Traditionally, claim preclusion (*i.e., res judicata*) barred relitigation of the same claim or cause of action between the same parties. As joinder rules were relaxed to permit related claims to be resolved in a single proceeding, the doctrine expanded to encompass not only claims that were actually raised in and resolved by a prior adjudication, but also those that could have been raised. *See generally Troutman v. Erlandson*, 287 Or 187, 201-07, 598 P2d 1211 (1979) (discussing development of claim preclusion doctrine). Under that expansive "transactional approach," which is endorsed by federal and Oregon precedents alike, claim preclusion bars not only claims that have actually been litigated, but any claim arising out of the same transaction or series of connected transactions. *See Costantini v. Trans World Airlines*, 681 F2d 1199, 1201-02 (9th Cir), *cert den*, 459 US 1087 (1982) (claim preclusion applies to claims arising from the "same transactional nucleus of facts");[18] *Drews v. EBI Companies*, 310 Or 134, 140-42, 795 P2d 531 (1990) (tracing development of claim preclusion principle and affirming Oregon's endorsement of transactional approach).

█ As a rule, then, a subsequent claim is barred by a prior judgment if the earlier litigation proceeded to final judgment, involved the same parties, and concerned a claim arising out of the same transaction or series of related transactions. *See Headwaters, Inc. v. U.S. Forest Service*, 399 F3d 1047, 1051-57 (9th Cir 2005) (outlining elements and citing settled authorities); *see also Drews*, 310 Or at 140-41 (articulating similar test). Claim preclusive effect is given to consent decrees and judgments entered by stipulation or settlement, as well as to those that follow after a full adjudication of the

---

[18] Although not bound by federal decisions from the Ninth Circuit, Oregon courts often give particular weight to those decisions because Oregon lies in that circuit. *See, e.g., Van de Hey v. U.S. National Bank*, 102 Or App 203, 206-07, 793 P2d 1388 (1990), *aff'd*, 313 Or 86, 829 P2d 659 (1992). In this instance, however, we cite Ninth Circuit precedent whenever possible not because our state lies within that circuit's boundaries, but because Idaho—where the MDL judgment was rendered—does.

merits. *See May v. Parker-Abbott Transfer and Storage, Inc.*, 899 F2d 1007, 1010-11 (9th Cir 1990) (parties may alter the preclusive effects of a judgment by so providing in settlement agreement leading to consent decree; where they fail to do so, however, court will not suspend ordinary operation of *res judicata*).[19] And claim preclusion applies to an action brought by persons who were parties to a prior class action only because they failed to opt out of the class. *Peters v. National R.R. Passenger Corp.*, 966 F2d 1483, 1487 (DC Cir 1992). That is true even if they did not receive notice of the action or of their right to opt out. *Id.* As long as the parties to an action had a "full and fair opportunity to litigate," whether or not they actually did so, claim preclusion prevents relitigation of the same or related claims in order to protect "adversaries from the expense and vexation attending multiple lawsuits" as well as to conserve judicial resources and minimize the possibility of inconsistent decisions. *Montana v. United States*, 440 US 147, 153-54, 99 S Ct 970, 59 L Ed 2d 210 (1979).

■ Plaintiff does not dispute that, under those settled principles, this action ordinarily would be barred by the MDL judgment. The essential prerequisites for claim preclusion are satisfied here: Both plaintiff and Albertson's were parties to the MDL action; the claims in this case are the same or closely related to those in the MDL action; and the MDL action was resolved by final judgment. *See Communications Telesystems International v. Cal. P.U.C.*, 196 F3d 1011, 1017 (9th Cir 1999) (dividing claim preclusion test into those three factors). The fact that the MDL judgment was based on the parties' settlement rather than a full adjudication of the merits, or the further fact that plaintiff was swept inadvertently into the MDL action because she did not get notice of it and did not opt out of it, are of no moment.

Plaintiff does argue, however, that the claim preclusion should not apply here because Albertson's waived its ability to rely on it. *See generally Kern Oil & Refining Co. v.*

---

[19] *See also Arizona v. California*, 530 US 392, 414, 120 S Ct 2304, 147 L Ed 2d 374, *supplemented by* 531 US 1 (2000) (a judgment incorporating a settlement generally has, and is intended to have, claim preclusive effect; but such a judgment ordinarily lacks issue preclusive effect).

*Tenneco Oil Co.*, 840 F2d 730, 734-35 (9th Cir), *cert den*, 488 US 948 (1988) (because claim preclusion generally is an affirmative defense, it may be waived if not timely raised); ORCP 19 B (claim preclusion is an affirmative defense that must be raised in a responsive pleading). A waiver resulted, plaintiff maintains, when Albertson's "acquiesced" in defending both the MDL action and this action by permitting both cases to proceed at the same time without timely raising any objection to the pendency of both actions.[20]

Plaintiff's argument invokes what has become a recognized exception to claim preclusion—that of "waiver by acquiescence." That exception is implicated when a plaintiff pursues multiple actions involving the same claim simultaneously, as opposed to sequentially. In such a circumstance, if the defendant "acquiesces" to having to defend against the multiple actions by not raising an available objection to the plaintiff's pursuit of them, a waiver occurs. *See Restatement* at § 26(1)(a) (a plaintiff may pursue multiple actions on the same claim if "the parties have agreed in terms or in effect that the plaintiff may split [his] claim, or the defendant has acquiesced therein").[21] As the *Restatement* explains:

---

[20] Albertson's has neither responded to, nor even acknowledged, plaintiff's argument in this regard.

[21] "Claim splitting" classically refers to a situation in which a plaintiff pursues the same claim under different legal theories, or by asserting different injuries or remedies, in multiple actions, despite the fact that they arise from the same transaction or series of transactions and thus qualify (under a transactional approach) as a single claim. The same problems are created when a plaintiff presents identical claims in two simultaneously pending actions, and there is no logical reason to distinguish between pursuing the same claim in two proceedings and pursuing different parts of the same claim in two proceedings.

The multiple actions in this case present both situations. Plaintiff's state law claim for "termination" wages was based on a different statutory right to recovery than her claim for unpaid overtime wages. *See* ORS 652.140 (claim for unpaid "termination" wages); ORS 653.261 (claim for unpaid overtime wages). The MDL action, however, directly adjudicated only the class members' off-the-clock wage claims—that is, their claims for unpaid overtime wages. Thus, plaintiff's pursuit of her termination wage claim in state court presents a classic "claim splitting" situation because that claim, although grounded on a separate legal theory, arises from the same factual transaction that was the basis for the MDL action (*i.e.*, Albertson's failure to pay plaintiff for off-the-clock overtime when it issued her a final paycheck). On the other hand, her pursuit of her off-the-clock wage claim in state court presents a problem of duplicate or redundant litigation, not claim splitting *per se*.

"Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim."

*Id.* at comment a; *see also* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 18 *Federal Practice & Procedure* § 4404, 52-53 (2d ed 2002 & Supp 2004) ("The conduct of a defendant faced with parallel litigation may fairly be interpreted as at least tacit consent to proceeding with separate actions, abandoning a possible claim preclusion defense in the action that proceeds after the first judgment.").

The waiver-by-acquiescence exception is consonant with the claim preclusion doctrine, one of the main rationales for which is to protect a defendant from the harassment of defending against multiple actions. If a defendant chooses to defend the multiple actions without complaint rather than exercise any available remedies to force plaintiff to choose a single forum, there is no unfairness in holding the defendant to that choice. *See Restatement* at § 26 comment a; *see also Calderon Rosado v. General Elec. Circuit Breakers*, 805 F2d 1085, 1087 (1st Cir 1986) (if the purpose of the *res judicata* doctrine is to provide finality in the resolution of disputes and to protect defendants from being vexed by multiple suits, it stands to reason that acquiescence by the defendant will work a waiver).

Equally important, the exception avoids abuses. As one court has observed in embracing the exception, a contrary approach "would encourage litigants to engage in dishonest (or at least less than forthright) behavior" and in "unsavory tactical maneuvers." *Matter of Super Van Inc.*, 92 F3d 366, 371 (5th Cir 1996). The Ninth Circuit has voiced similar concerns in adopting the exception: "There is no reason to allow litigants to delay objecting to dual proceedings until they receive a favorable judgment in one proceeding. * * * [P]ermitting such conduct could only encourage mischief." *Rotec Industries, Inc. v. Mitsubishi Corp.*, 348 F3d

1116, 1119 (9th Cir 2003), *cert den*, 541 US 1063 (2004). For those reasons, the waiver-by-acquiescence exception set forth in the *Restatement* has met with broad acceptance in federal courts, as well as in Oregon. *See Clements v. Airport Authority of Washoe County*, 69 F3d 321, 328 (9th Cir 1995) (finding waiver by acquiescence); *Rennie v. Freeway Transport*, 294 Or 319, 328, 656 P2d 919 (1982) (endorsing the acquiescence exception in section 26(1)(a) of the *Restatement* but concluding that, on the facts before the court, the exception did not apply);[22] *see generally Super Van Inc.*, 92 F3d at 371 (joining "the First, Fourth, Seventh, and Ninth Circuits in adopting section 26(1)(a)").

We therefore agree with plaintiff that waiver by acquiescence operates as an exception to claim preclusion and that, in this particular case, Albertson's conducted its defense in such a way as to waive its ability to rely on claim preclusion. Three aspects of the procedural history of this case and the MDL action compel that conclusion.

First, Albertson's was content to defend this case and the MDL action without timely exercising the procedural

---

[22] In *McAmis Industries v. M. Cutter Co.*, 161 Or App 631, 642, 984 P2d 909 (1999), we acknowledged *Rennie's* endorsement of section 26(1)(a) of the *Restatement* and its exception for waiver by consent or acquiescence. As did the court in *Rennie*, however, we determined that the record in that particular case did not support a conclusion that the defendants agreed to or acquiesced in the plaintiff's pursuit of multiple actions. *Id.* We further observed that a waiver by acquiescence did not occur because the federal district court, on whose judgment the defendant relied, "did not expressly withhold judgment on the state claim, *a condition to the avoidance of claim preclusion by acquiescence* or consent." *Id.* (citing *Rennie*, 294 Or at 330) (emphasis added). That observation was unnecessary to our holding, inasmuch as defendant's failure to acquiesce to the pending multiple actions was basis enough to reject the exception. But in all events, *McAmis* read too much into *Rennie* in that regard. To be sure, viewed in isolation, the discussion in *Rennie* is ambiguous and can be read in that way. *See Rennie*, 294 Or at 329-30 (declining to apply the exception for acquiescence under the *Restatement* at section 26(1)(a) because the defendant timely voiced objections to the plaintiff's simultaneous prosecution of multiple actions arising from one transaction and observing, "[f]urthermore" that "this is not a case where the plaintiff's state law claim was expressly reserved for later litigation"). But *Rennie* should not be so read. Section 26 of the *Restatement* states expressly that, "[w]hen *any* of the following circumstances exists," a waiver results. (Emphasis added.) A defendant's acquiescence is described in section 26(1)(a). A court's express withholding or reservation of a claim in its judgment is a separate exception, set forth in section 26(1)(b). In other words, acquiescence and judicial reservation of the claim are different exceptions, not cumulative criteria of the same one. To the extent that *McAmis* suggests otherwise, we disavow that suggestion.

remedies available to it to avoid having to defend both actions simultaneously. In effect, Albertson's "sat on its rights," both in state and in federal court. In state court, Albertson's could have moved to dismiss plaintiff's claims under ORCP 21 A(3) on the ground that the same claims were pending in the MDL action. Albertson's was entitled to that dismissal as a matter of right, because, as Albertson's now urges, a judgment in the MDL action would bar this action (at least, in the absence of a waiver). *See Lee v. Mitchell*, 152 Or App 159, 166, 953 P2d 414 (1998) (if entry of a judgment in another pending action would preclude plaintiff from asserting claims in an Oregon action, the Oregon court should dismiss those claims, as a matter of law, under ORCP 21 A(3)). Albertson's could have made such a motion long before a judgment was rendered in the MDL action.[23] But Albertson's instead waited. By the time Albertson's filed its motion for summary judgment raising claim preclusion (and revealing the existence of the MDL action), plaintiff could neither opt out of the Rule 23 class in the MDL action nor recover for her claims in that action. Albertson's silence effectively froze plaintiff out of any remedy on her claims. *See, e.g., Rennie*, 294 Or at 329 (defendant timely voiced objection to plaintiff's unilateral pursuit of multiple lawsuits by moving to dismiss under ORCP 21 A(3); having done so, the "onus" was on plaintiff to consolidate her claims and pursue them in one action only).[24]

---

[23] At least two weeks after the filing of this action, if not immediately on its filing, Albertson's could have sought dismissal pursuant to ORCP 21 A(3). By April 14, 2000, Albertson's and the representative plaintiffs in the MDL action had entered into a settlement agreement that described the Rule 23 class in such a way as to include plaintiff in its membership, unless she opted out. *See Webb v. Underhill*, 174 Or App 592, 27 P3d 148 (2001) (an action is considered pending, for purposes of dismissal ORCP 21 A(3), as soon as it is filed). Even if Albertson's is excused from filing an ORCP 21 A(3) motion because the Idaho federal court had not preliminarily approved the settlement, that approval came on June 12, 2000. Ironically, that was the same day that the Oregon federal court remanded plaintiff's state claims to state court. Albertson's stood silent, however, tacitly agreeing that plaintiff's state law claims could properly be adjudicated in state court. Once those claims were back before the state court, Albertson's actively defended the claims for the ensuing 10 months rather than seek a dismissal under ORCP 21 A(3), as it was entitled to do.

[24] Albertson's argued below that it could do nothing to object to plaintiff's participation in multiple actions until it knew whether plaintiff would opt out of the Rule 23 class or would, instead, file a notice of claim and pursue her remedies

Albertson's similarly "sat on its rights" in federal court, and in doing so, it shirked its obligations to the federal tribunal as well. At Albertson's behest, this case was removed to Oregon federal district court. Once removed, this action qualified as a so-called "tag-along" action. Under the federal rules governing multidistrict litigation, Albertson's counsel had an affirmative obligation to notify the federal panel that oversees such litigation of the existence of this action.[25] Albertson's did not do so, however, even though its counsel was aware of the relationship between this case and the MDL action, as evidenced by its later assertion of claim preclusion in the state court.[26] Again, as in state court, Albertson's stood silent and tacitly agreed to permit this action to proceed separately and simultaneously. *See, e.g., Power Travel International, Inc. v. American Airlines, Inc.,* No. 02 Civ 7434 RWS, 2004 WL 2428714 (SDNY Oct 29, 2004) (even though all parties knew of pending MDL action

---

under the terms of the settlement agreement. As the arbitrator observed, however, that argument is disingenuous. Plaintiff *was* a member of the class, and thus a party to the MDL action, unless and *until* she opted out. *See* FRCP 23; *cf. Tice v. American Airlines, Inc.,* 162 F3d 966, 972-73 (7th Cir 1998), *cert den,* 527 US 1036 (1999) ("Unless there is a *properly certified class action,* handled with the procedural safeguards both state and federal rules afford, normal privity analysis must govern whether nonparties to an earlier case can be bound to the result." (Emphasis added.)). Given that status, a motion under ORCP 21 A(3) was available to Albertson's without waiting to see if plaintiff would opt out.

[25] The cases comprising the MDL litigation were consolidated and transferred to the Idaho federal court pursuant to 28 USC section 1407. The MDL action was, therefore, governed by the Panel Rules. *See* 201 Or App at 35-36 n 3. Panel Rule 7.5(e) imposes an affirmative duty upon "[a]ny party or counsel in actions previously transferred under Section 1407 * * * [to] promptly notify the Clerk of the Panel of any potential 'tag-along actions' in which that party is also named or in which that counsel appears." Panel Rule 1.1, in turn, defines "tag-along action" as "a civil action pending in a district court and involving common questions of fact with actions previously transferred under Section 1407." *See also In re Mid-Air Collision Near Fairland, Indiana,* 309 F Supp 621, 622 n 1 (Jud Pan Mult Lit 1970) (any cases filed after petition for transfer would be considered tag-along cases); Manual for Complex Litigation § 20.132 (4th ed 2004) (describing affirmative duty to notify).

[26] Worth noting in that regard is that the attorneys representing Albertson's in this action copied most, if not all, of plaintiff's discovery requests on Albertson's Director of Labor & Employment Law, who is an attorney in Albertson's Boise, Idaho, office and who had personal knowledge of the MDL action. That fact certainly suggests that corporate counsel for Albertson's recognized the relationship between the two actions but, despite that recognition, did nothing to bring it to plaintiff's, the state court's, or the Oregon and Idaho federal district courts' attention.

and defendant expressly argued that the MDL judgment would have claim preclusive effect in the tag-along action, defendant waived the ability to rely on the MDL judgment by neglecting its obligation to notify the MDL panel or the transferee court that the tag-along case existed).

The second procedural aspect of this case that supports waiver by acquiescence is that Albertson's "hid the ball" during discovery in this case. At some point between March and April 2000, plaintiff's requests for discovery asked Albertson's specifically to

> "[p]roduce all documents * * * relative to any and all complaints or grievances made against [d]efendant pursuant to the Fair Labor Standards Act, Chapters 652 or 653 of the Oregon Revised Statutes and/or all of [d]efendant's employees' formal and informal complaints or grievances requesting wages or disputing amounts of wages paid. This request includes all the complaints filed, the reports of the investigation, the reports to any governmental agency, the reports by any governmental agency, the reports to any arbitrator, mediator or judge, the findings or opinions of any arbitrator, mediator or judge and the resolution of the issues that resulted in the complaints or grievances."[27]

Albertson's responded to the request in May 2000, at which point Albertson's had entered into the settlement agreement in the MDL action. Notwithstanding that settlement agreement, Albertson's produced no documents and instead objected "on the grounds that [plaintiff's discovery request sought] information *concerning issues other than those involved in this litigation.*" (Emphasis added.) By that express response to plaintiff's discovery request, Albertson's treated this case as a separate and independent matter, one that bore no relationship to the MDL action.[28] But, as we

---

[27] Approximately three other requests for documents (request numbers 5, 7, and 18) arguably were designed to seek information relating to any potential class action for unpaid wages. Requests 5 and 7 both asked for documents that referenced the subject of plaintiff's wages "either individually or by *inclusion in a larger group.*" (Emphasis added.) Plaintiff, however, particularly emphasizes request number 16, which we quote above. We therefore focus on it as well.

[28] That is especially so given the timing of Albertson's response to plaintiff's discovery request. As noted above, Albertson's filed its response to plaintiff's request for documents in May 2000, while the case was still pending in federal district court and, thus, subject to the Federal Rules of Civil Procedure. Accordingly, by virtue of its response to plaintiff's discovery request, Albertson's *certified* that

have repeatedly emphasized, Albertson's did not hesitate to assert the claim preclusive effect of the MDL judgment once it was to Albertson's tactical advantage—and to plaintiff's distinct disadvantage—to do so. *See Clements*, 69 F3d at 329 (factoring into acquiescence analysis the fact that defendants' late assertion of claim preclusion would work a substantial injustice on the plaintiffs). Under the circumstances, it is fair to hold Albertson's to its representations that this case and the MDL action were distinct and unrelated by concluding that Albertson's acquiesced in defending them simultaneously.

Third, and finally, this is not a case in which plaintiff "unilaterally" pursued simultaneous litigation of her claim or claims in multiple forums. To be sure, that was the effect of plaintiff's failure to opt out of the state law class in the MDL action. But plaintiff did not consciously choose to participate in the MDL action nor, through any conscious or deliberate action of her own, did she actively pursue her claim in the Idaho federal court. Her party status in the MDL action was, instead, completely unwitting. For her part, plaintiff made every effort to litigate her claims in a single action.

Albertson's, on the other hand, knew from day one in this case that this action and the MDL action were simultaneously pending. Albertson's then actively defended both actions for more than a year. As between the parties in this case—plaintiff and Albertson's—only Albertson's had actual knowledge that plaintiff, by virtue of her membership in the Rule 23 class in the MDL litigation, was simultaneously pursuing her claims in dual proceedings. And Albertson's kept that knowledge to itself until after it received a favorable judgment in the MDL action, at which point it used the MDL judgment offensively for strategic advantage—that is, to have this action dismissed. Thus, this case stands in stark contrast to ones in which a plaintiff unilaterally and affirmatively pursues multiple actions and the defendant, over its resistance, is on the unwilling receiving end of those actions. *See, e.g., Rennie*, 294 Or at 229 (defendant timely objected to

---

its objection to plaintiff's discovery request was warranted by existing law. *See* FRCP 26(g)(2) (stating that every objection made by a represented party must be signed, certifying that the objection is "warranted by existing law," and not imposed for any improper purpose, such as delay or harassment).

plaintiff's "unilateral pursuit of multiple lawsuits"); *McAmis Industries v. M. Cutter Co.*, 161 Or App 631, 643, 984 P2d 909 (1999) (no waiver by acquiescence where "[p]laintiff, not defendants, chose dual forums for the litigation of its dispute with defendants" while defendants "assert[ed] all procedural and substantive arguments available to protect themselves from the risks posed by that decision").

Albertson's conduct in this case is at least as compelling a basis, if not a more compelling one, than the conduct of other defendants who have been found to have waived, by acquiescence, their ability to rely on claim preclusion.[29] Again, Albertson's, not plaintiff, was aware of the simultaneously pending cases in this and the MDL action. Albertson's avoided calling the MDL action to plaintiff's attention by evading a discovery request that should have resulted in disclosure of the MDL complaint, asserting that the request sought information about "unrelated" issues. Rather than do anything that would alert plaintiff to the pending MDL action, Albertson's silently defended this action for more than a year. In particular, Albertson's declined to move to dismiss this action, as it could have done, or to alert the federal tribunal to its pendency, as it should have done, either of which would have aided in registering Albertson's objection to having to defend both actions simultaneously. Instead, Albertson's bypassed those remedies and defended this case as though it should proceed independently and separately. It did so, patently, for tactical advantage. To borrow from the Ninth Circuit's admonition, to permit a defendant to engage in such conduct can "only encourage mischief." *Rotec Industries, Inc.*, 348 F3d at 1119. Here, mischief appears to abound.

We therefore conclude that Albertson's waived its claim preclusion defense by acquiescing in plaintiff's simultaneous—albeit, unwitting—pursuit of her claims in

---

[29] For representative cases in which the defendant's conduct resulted in a waiver by acquiescence, see *Rotec Industries, Inc.*, 348 F3d 116; *Estate of Lake Geneva Sugar v. General Star Indem.*, 200 F3d 479 (7th Cir 2000); *Super Van, Inc.*, 92 F3d 366; *Clements*, 69 F3d 321; *Kern Oil & Refining Co.*, 840 F2d 730; *Calderon Rosado*, 805 F2d 1085; *Cowan v. Ernest Codelia, P.C.*, 149 F Supp 2d 67, 67-77 (SDNY 2001); *Chestnut Hill Dev. Corp. v. Otis Elevator Co.*, 739 F Supp 692 (D Mass 1990).

multiple actions. Because of that waiver, Albertson's was not entitled to rely on claim preclusion and was not entitled to summary judgment on that ground.

Reversed and remanded.