Argued and submitted December 15, 2003, reversed and remanded for reconsideration April 28, respondent's petition for reconsideration filed June 30; respondent's amended petition for reconsideration filed July 8; and petitioner's response to petition for reconsideration filed July 21 allowed by opinion September 1, 2004

See 195 Or App 94, 96 P3d 882 (2004)

In the Matter of the Compensation of
Darwin B. Lederer, Claimant.

Darwin B. LEDERER,
*Petitioner,*

*v.*

VIKING FREIGHT, INC.,
*Respondent.*

01-06919; A119809

89 P3d 1199

Randy M. Elmer argued the cause for petitioner. With him on the briefs was Kryger, Alexander, Egan & Elmer, P.C.

Jerald P. Keene argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

HASELTON, P. J.

## HASELTON, P. J.

In this workers' compensation case, the Workers' Compensation Board (the board) (1) declined to award temporary disability benefits, finding that claimant's attending physician had not "authorized" temporary disability for the time period in question, ORS 656.262(4)(a),[1] and (2) denied claimant's request for penalties and attorney fees for the self-insured employer's allegedly unreasonable claim processing. Claimant seeks judicial review of the board's order. At issue is the board's standard of review of an insurer's or self-insured employer's determination regarding the authorization of temporary disability benefits. We review for errors of law, ORS 183.482(8), and conclude that the board erred in deferring to employer's determination that claimant's attending physician had not authorized temporary disability benefits.

The pertinent facts are undisputed. Claimant was injured at work on January 27, 1999. On February 3, 1999, claimant's attending physician, Dr. Thomas Wright, diagnosed claimant as having a lumbar strain. Wright completed a workers' compensation Form 827, checking a box that released claimant to modified work and authorized temporary disability. Employer accepted the claim for a lumbar strain on February 22, 1999.

On February 24, 1999, Wright examined claimant and noted that claimant's x-rays showed congenital spondylolysis.[2] Wright also noted claimant's work restrictions. On

---

[1] ORS 656.262 has been amended several times since claimant's injury in 1999. *See* Or Laws 1999, ch 313, § 5; Or Laws 2001, ch 621, § 83; Or Laws 2001, ch 865, § 7; Or Laws 2003, ch 667, § 1; Or Laws 2003, ch 756, § 1; Or Laws 2003, ch 760, § 2; Or Laws 2003, ch 811, § 9. None of those amendments has altered the statutory language addressed in this opinion. However, because the 2003 version of the statute came into effect on January 1, 2004, all references to ORS 656.262 in this opinion are to the 2001 version of that statute.

[2] According to *Stedman's Medical Dictionary* 1678 (27th ed 2000), "spondylolysis" is a "[d]egeneration or deficient development of a portion of the vertebra," commonly involving the pars interarticularis, "which can result in a spondylolithesis." "Spondylolithesis" is the "[f]orward movement of the body of one of the lower lumbar vertebrae on the vertebra below it, or upon the sacrum." *Id.* Pars interarticularis is "the segment of bone between the superior and inferior articular facets, especially in the lumbar spine." *Id.* at 1319.

March 10, 1999, Wright released claimant to regular work, but, on March 22, 1999, he again diagnosed claimant with both a lumbar strain and congenital spondylolysis, referred claimant to a neurosurgeon, and advised claimant not to work.

On August 16, 1999, Wright diagnosed claimant with congenital spondylolysis and released claimant to modified work with specific restrictions on lifting and movement. On September 9, 1999, Wright wrote a letter to employer's claim processing agent in which he described the "pre-existing condition discovered when symptoms were produced by [claimant's] work-related injury, namely a congenital spondylolysis bilateral at L5, [which has] existed throughout his working career and since birth without symptoms until the [January 1999] injury." The same day, Wright wrote that claimant was not yet medically stationary and released claimant to modified work duties with similar, but lessened, restrictions on lifting and movement. Wright recorded a similar diagnosis on September 30, 1999. On November 8 and 22, 1999, Wright diagnosed claimant with congenital pars interarticularis defects and again restricted claimant's work activities.

On January 3, 2000, Wright wrote that claimant's injury was in a "stationary state" and suggested that claimant begin training for a new occupation if he wished to avoid surgery, "although [surgery] may become necessary because of the instability of his L5-S1 and L4-L5 intervertebral joints due to the spondylolysis." Two weeks later, Wright reiterated that, although he believed that claimant had become medically stationary on January 11, 2000, claimant was not released to regular work, and suggested vocational services. On February 3, 2000, Wright wrote that he believed that claimant should continue with permanent work restrictions. On March 30, 2000, Wright responded to a report prepared by employer's case manager and emphatically expressed his belief that claimant's work restrictions were attributable to the congenital bilateral pars defect; in other words, Wright reported that the cause of claimant's disability was his work injury combining with a preexisting condition that was, until the injury, asymptomatic.

Employer issued a notice of closure on April 5, 2000, and awarded temporary disability benefits from February 5, 1999 through January 3, 2000. The notice of closure included a medically stationary date of January 3, 2000. Pursuant to ORS 656.262(7)(c), employer also issued an updated notice of acceptance, specifying the lumbar strain as the accepted condition. Claimant did not appeal that notice.

On August 22, 2000, Wright wrote a letter to claimant's attorney, addressing the "relationship between the bilateral, congenital defects * * * and [claimant's January 1999] work-related injury." He continued:

"My opinion is that the work incident referred to is the major contributing cause of his present disability and need for medical care. The work incident of 2[8] January 1999 is, in my opinion, the major contributing cause of the combined condition."

Based on that letter, on August 29, 2000, claimant filed a claim for aggravation of his injury.[3] Employer initially denied the claim, but, after a hearing, an administrative law judge (ALJ) set aside the denial. The board agreed, concluding that "claimant had proved that his compensable work injury was the major contributing cause of the need for treatment or disability for the 'combined condition,' consisting of the compensable injury and preexisting bilateral pars defects and spondylolisthesis."

As a result, on August 17, 2001, employer issued a "Second Amended Modified Notice of Acceptance," essentially reopening the April 5, 2000, updated notice of acceptance, accepting the claim as a combined condition consisting of the compensable lumbar strain and the preexisting bilateral pars defects and spondylolisthesis. On August 28, 2001, an employer-requested medical examination was performed by Dr. John Swanson. Swanson recommended limiting claimant to modified work because of the preexisting spondylolysis and spondylolisthesis. Finally, on November 10, 2001,

---

[3] Claimant styled his claim as one for "aggravation of a bilateral Pars Defect and [spondylolithesis]." We note, for clarification, that the claim was ultimately accepted as a combined condition under ORS 656.005(7)(a)(B) (2001).

Wright generally concurred with Swanson's diagnosis, noting, in particular, that he believed that claimant would need job retraining.

Claimant requested a hearing on September 4, 2001, after employer refused to pay temporary disability benefits for the combined condition. Claimant requested benefits from January 3, 2000, the date on which his temporary disability benefits on the initial lumbar strain ceased. As of the date of the hearing, December 3, 2001, the combined condition claim remained open.

The ALJ concluded that claimant was not entitled to temporary disability benefits after January 3, 2000. In particular, the ALJ concluded that, when there is no express authorization for temporary disability benefits from the attending physician, the employer is not affirmatively bound to infer such authorization. Rather, citing the board's order in *Robert W. McQueen II*, 53 Van Natta 1196 (2001), the ALJ held that, although an employer *may* infer such authorization from medical reports, there is no duty to do so. The ALJ found that Wright had not expressly authorized temporary disability benefits and, as a result, that claimant was not entitled to those benefits.

On appeal, the board affirmed, concluding that, "[w]hile the employer was required to process the new medical conditions, we agree with the ALJ that the record does not contain sufficient authorization for payment of temporary disability." The opinion noted that "this case turns on whether the attending physician's (Dr. Wright's) work restrictions are sufficient to authorize temporary disability." In a footnote, the majority explained:

> "The dissent argues that continuation of claimant's work restrictions constitutes sufficient authorization of temporary disability. We agree, however, with the ALJ that there is no affirmative duty to infer authorization of temporary disability from a medical report that does not clearly authorize such benefits. *See [McQueen]*."[4]

---

[4] The dissent argued that "the medical evidence more than adequately supports a conclusion that claimant was on an open 'new medical conditions' claim with job restrictions that prevented him from working" and that Wright's work restrictions sufficiently authorized temporary disability.

Thus, the board, like the ALJ, concluded that, because the attending physician had not expressly authorized temporary disability, the employer was not obligated to pay such benefits even if authorization could reasonably be inferred from the medical record.

On judicial review, claimant raises two principal arguments. First, claimant argues that he is entitled to temporary disability benefits from January 3, 2000, because, although Wright did not expressly authorize those benefits for his combined condition claim, the medical evidence in the record sufficiently indicates authorization of those benefits and, therefore, employer must pay the benefits under ORS 656.262(4)(a). Second, claimant argues that, given his entitlement to temporary disability benefits, the board erred in failing to impose sanctions and attorney fees against employer.

Employer responds that the board correctly interpreted the relevant statutes and rules and concluded that an insurer or self-insured employer is not required to pay benefits absent express authorization from the attending physician. Employer alternatively argues that, because claimant was determined to be medically stationary on January 3, 2000, and remained medically stationary throughout the time in question, he has no substantive entitlement to temporary disability benefits.

■        We begin with the question of whether, in the absence of an express authorization by the attending physician, an insurer or self-insured employer can properly refuse to pay temporary disability benefits, even if a reasonable insurer or self-insured employer would infer authorization from the totality of the medical record.

ORS 656.262(4) triggers an insurer's or self-insured employer's duty to pay temporary disability benefits. *See Menasha Corp. v. Crawford*, 332 Or 404, 413, 29 P3d 1129 (2001). Specifically, ORS 656.262(4) provides, in part:

"(a)   The first installment of temporary disability compensation shall be paid no later than the 14th day after the subject employer has notice or knowledge of the claim, *if the*

*attending physician authorizes the payment* of temporary disability compensation.

"* * * * *

"(g)    Temporary disability compensation is not due and payable pursuant to ORS 656.268 after the worker's attending physician ceases to authorize temporary disability *or for any period of time not authorized by the attending physician*. No authorization of temporary disability compensation by the attending physician under ORS 656.268 shall be effective to retroactively authorize the payment of temporary disability more than 14 days prior to its issuance.

"(h)    The worker's disability may be authorized only by a person described in ORS 656.005(12)(b)(B) or 656.245(5) for the period of time permitted by those sections. The insurer or self-insured employer may unilaterally suspend payment of temporary disability benefits to the worker at the expiration of the period until temporary disability is reauthorized by an attending physician."

(Emphasis added.) To determine what constitutes sufficient "authorization" for purposes of that statute, we begin by examining the statutory text in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993).

The text of the statute does not define the word "authorize." As pertinent here, the plain meaning of the word is "to endorse, empower, justify, or permit by or as if by some recognized or proper authority." *Webster's Third New Int'l Dictionary* 146 (unabridged ed 1993). That definition, however, does not address the exact form of or specificity required by an attending physician's endorsement or permission for purposes of ORS 656.262(4). In other words, although an attending physician may have the authority to permit an injured worker to collect temporary disability benefits, what form must a grant of that permission take?

None of the other provisions of ORS chapter 656 clarifies the ambiguity. Because the "text in context" does not resolve the inquiry, we resort to legislative history to ascertain legislative intent. *PGE*, 317 Or at 611-12. That history demonstrates that "authorization," generally, connotes the attending physician's contemporaneous approval that the

injured worker is excused from work. That is, legally sufficient authorization need not explicitly refer to, and direct or approve, the payment of temporary disability *benefits*; rather, "authorization" refers to contemporaneous medical confirmation that an employee cannot perform his or her regular work and is excused from doing so.

The language "if the attending physician authorizes the payment of temporary disability compensation" was added to ORS 656.262(4)(a) in 1995 as part of Senate Bill (SB) 369.[5] Or Laws 1995, ch 332, § 28. Before the Senate Committee on Labor and Government Operations, one of the primary authors of the bill, Representative Kevin Mannix, explained the purpose of adding the language:

> "[The amendment to ORS 656.262(4)(a)] requires physician authorization of all temporary disability. This section has been changed to make it clear that, whether it's before or after acceptance of the claim, it's up to the attending physician to authorize someone being off work. The problem here * * * has been sometimes the claim hasn't been accepted, yet it's being processed, and there is an argument that, prior to claim acceptance, the worker gets temporary disability, even without the authorization of an attending physician. *This says, no, you need to have a doctor authorizing you to be off work*. I would also emphasize that the way this is worded, it needs to be a contemporaneous authorization. That is, the doctor is saying now you need to be off work; not retroactive, not six months later the doctor saying, well, in retrospect, yeah, I should have pulled the person off work. You're supposed to be pulling the person off work at the time.

> "[In the amendments to ORS 656.262(4)(e), (f), and (g),] we restate conditions for termination of temporary disability. We clarify the 1990 reforms. These amendments state that benefits may be terminated when the attending physician ceases to authorize temporary disability * * *."

Tape Recording, Senate Committee on Labor and Government Operations, SB 369, Jan 30, 1995, Tape 15, Side B (statement of Rep Kevin Mannix) (emphasis added).

---

[5] SB 369 also added subsections (g) and (h) to ORS 656.262. *See* Or Laws 1995, ch 332, § 28.

Mannix's testimony reveals that the drafters of the legislation were concerned with ensuring that an attending physician has contemporaneously authorized an injured worker *to be off work* before the insurer or self-insured employer is required to pay temporary disability benefits. The authorization requirement does not speak of an entitlement to temporary disability benefits expressly authorized by the attending physician. Rather, once the attending physician has contemporaneously excused an injured worker from work, the payment of temporary disability benefits is authorized, and the "temporary disability compensation shall be paid" within 14 days. ORS 656.262(4)(a).

Here, employer does not argue that authorization under ORS 656.262(4)(a) must be expressed in a particular manner in order to satisfy the statute. Instead, employer's argument is premised on OAR 436-060-0020(4), which provides:

> "Authorization from the attending physician or authorized nurse practitioner may be oral or written. The insurer at claim closure, or the division at reconsideration of the claim closure, *may infer authorization* from such medical records as a surgery report or hospitalization record that reasonably reflects an inability to work because of the compensable claim, or from a medical report or chart note generated at the time of, and indicating, the worker's inability to work. No compensation is due and payable after the worker's attending physician or authorized nurse practitioner ceases to authorize temporary disability or for any period of time not authorized by the attending physician or authorized nurse practitioner pursuant to ORS 656.262(4)(g)."

(Emphasis added.) Employer argues that that rule necessarily expresses the view of the Department of Consumer and Business Services that "an attending physician's statement regarding a worker's inability to work is not necessarily the legal equivalent of a[n express] statement authorizing time loss payments." Rather, employer asserts, the rule corroborates its view, endorsed by the board, that "an insurer is *permitted* to infer it as an indication of such authorization, but [is] not required to do so." (Emphasis in original.) By converse or negative implication, employer reasons that, under the

rule, unless authorization of benefits is explicitly stated, an insurer or self-insured employer is not required to infer authorization from contemporaneous medical records indicating an inability to work, even if an objectively reasonable insurer or self-insured employer would understand those records to embody the requisite authorization. In that regard, employer emphasizes that claimant has not challenged OAR 436-060-0020(4) as being fundamentally inconsistent with ORS 656.262 and, thus, *ultra vires*.

Claimant counters that, whatever its other potential deficiencies, OAR 436-060-0020(4) addresses circumstances different from those presented here. Thus, claimant contends, the rule is inapposite:

> "[B]y its own terms the rule is restricted to use by the insurer * * * *at the time of claim closure.* The rule does not address entitlement to [temporary disability] on an open claim on a procedural basis, but is rather a tool to allow inferences to be drawn from medical records in determining substantive entitlement to [temporary disability] at closure."

(Emphasis in original.)

We agree with claimant. Employer's reliance on OAR 436-060-0020(4) is misplaced because that rule, by its terms, addresses processing obligations at the time of claim closure. Here, at the time that claimant requested temporary disability benefits on the combined condition, that claim was in open status—and, indeed, remained open at the time of the ALJ hearing. Whether employer might, *at the time of claim closure,* have the discretion not to treat contemporaneous medical reports indicating a claimant's inability to work as legally sufficient authorization of temporary disability benefits is not at issue. Consequently, OAR 436-060-0020(4) is inapposite.[6]

---

[6] We note, parenthetically, that, because OAR 436-060-0020(4) was promulgated by the Director of the Department of Consumer and Business Services, and not by the Workers' Compensation Board, we do not review the board's construction of the rule under the deferential standard of *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 881 P2d 119 (1994). *See Polaski v. Clark*, 158 Or App 166, 171 n 5, 973 P2d 381 (1999). Thus, we interpret the meaning of this administrative rule by looking first at the language of the rule in order to "determine the meaning of the words used, giving effect to the intent of the enacting

We return, then, to ORS 656.262(4)(a). That statute directs that temporary disability benefits "*shall be* paid * * * if the attending physician authorizes the payment." As discussed above, authorization connotes an attending physician's contemporaneous approval excusing an injured worker from work. When an objectively reasonable insurer or self-insured employer would understand contemporaneous medical reports to signify such approval, temporary disability benefits are authorized, obligating the insurer or self-insured employer to pay such benefits.

Our construction of ORS 656.262 differs dramatically from the board's operative premise here that, unless the attending physician explicitly approves the payment of benefits, the insurer or self-insured employer was free not to pay temporary disability benefits even if contemporaneous medical reports signify approval excusing the worker from work. Because the board did not apply the correct legal standard in determining whether Wright authorized temporary disability benefits, we remand to the board for reconsideration of both claimant's entitlement to those benefits and any award of penalties and attorney fees.

Finally, as an alternative basis for affirmance, employer argues that, because claimant remained medically stationary throughout the time period in question, he had no substantive entitlement to temporary disability benefits. We note that, although there is some indication in the medical reports that claimant became medically stationary with respect to the combined condition in January 2001—months before he filed the claim for the combined condition—as of the date of the ALJ hearing, the combined condition claim *remained open.* Consequently, on this record, claimant's medically stationary date on the open claim has not yet been determined. *See* OAR 436-030-0020(1), (4) (the insurer "must" issue notice of closure within 14 days when medical information shows the worker is medically stationary; the notice of closure "must" include the medically stationary date).

Reversed and remanded for reconsideration.

body[.]" *OR-OSHA v. Don Whitaker Logging, Inc.*, 329 Or 256, 261, 985 P2d 1272 (1999).