Submitted November 6, 2013, vacated and remanded December 31, 2014

In the Matter of the Compensation of
Jackie A. Scott, Claimant.

Jackie A. SCOTT,
*Petitioner,*

*v.*

LIBERTY NORTHWEST INSURANCE CORPORATION;
and Northwest Clinical Registry, Inc.,
*Respondents.*

Workers' Compensation Board
1100306; A150234

341 P3d 220

Brian R. Whitehead filed the brief for petitioner.

David O. Wilson filed the brief for respondents.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

The question in this workers' compensation case is whether claimant, who was medically stationary on an underlying and compensable low-back claim, was nonetheless entitled to begin receiving temporary disability benefits on an accepted claim for an omitted medical condition. We vacate and remand for reconsideration the Workers' Compensation Board's order concluding that claimant was not entitled to them.

The pertinent facts are undisputed. While working for Liberty Northwest's (Liberty) insured as a certified nursing assistant on January 29, 2007, claimant suffered a work-related injury to her back. In March 2007, Liberty accepted a claim for an "L4-5 disc bulge." Claimant underwent three surgeries for her work-related injury in 2007. On September 24, 2007, Liberty issued a modified notice of acceptance in which it accepted "Left L4-5 disc protrusion/extrusion."

On September 18, 2008, claimant's attending physician, Dr. Craig McNabb, found that claimant was medically stationary. McNabb restricted claimant to modified work and, at the time of the hearing, claimant had not been released for regular work.

Liberty issued a notice of closure in October 2008, awarding claimant time loss through September 18, 2008, as well as permanent disability. The permanent disability award was subsequently reduced on reconsideration by the Appellate Review Unit of the Department of Consumer and Business Services (department), and that award has become final.

On November 20, 2008, claimant made a written request for acceptance of an omitted medical condition described as "arachnoiditis." Liberty arranged for claimant to be examined by Dr. Chen Tsai in January 2009. Tsai concluded that, based on a January 2008 MRI scan of claimant's low back, claimant did not have arachnoiditis, but did have scarring at the level of the surgeries. McNabb concurred with Tsai, concluding that claimant's compensable back condition had caused the scarring, as well as a loss of range of motion, discomfort, and dysfunction. In a report of June 5,

2009, McNabb noted that claimant had "significant permanent partial disability" due to scarring and nerve damage. On October 7, 2009, McNabb opined that claimant was "ever going to get back to work."

Liberty denied the arachnoiditis condition, but the parties subsequently reached a stipulation relating to the omitted medical condition claim, which the board approved on October 13, 2009. The stipulation states that the denial of the claim for arachnoiditis is "affirmed," but that Liberty accepts an omitted condition claim for "surgical scarring."

In December 2009, McNabb sent a letter to Liberty stating that claimant's surgical scarring condition had been medically stationary since September 18, 2008. He added that the impairment that he had identified in his September 2008 report would not have encompassed the newly accepted condition of surgical scarring.

Claimant requested a hearing, seeking temporary disability benefits for her omitted condition of surgical scarring. As of the date of the hearing, the omitted condition claim had not yet been closed.

An administrative law judge (ALJ) determined that claimant was entitled to an award of temporary disability benefits on her omitted condition claim from September 18, 2008, through the date of the hearing, as well as the assessment of a penalty under ORS 656.262(11) and attorney fees. The board reversed the ALJ. Reasoning that an award of temporary disability is made for *temporary* disability, *see* ORS 656.210 ("When * * * disability is only temporary, the worker shall receive [a percentage of wages.]"), the board concluded that claimant was not entitled to an award of temporary disability benefits for the surgical scarring condition, because the only medical evidence showed that claimant's disability was permanent, not temporary. For the reasons explained below, we conclude that the board erred in determining that claimant is not entitled to benefits for temporary disability (or "time loss") on her omitted medical condition claim for surgical scarring.

As we held in *Johansen v. SAIF*, 158 Or App 672, 976 P2d 84, *adh'd to on recons*, 160 Or App 579, 987 P2d

524, *rev den*, 329 Or 527 (1999), a new or omitted medical condition claim is to be processed as any other claim. *See also* ORS 656.267(2)(a) ("Claims properly initiated for new medical conditions and omitted medical conditions related to an initially accepted claim shall be processed pursuant to ORS 656.262.") With regard to the payment of benefits for temporary disability, ORS 656.262(4) provides, in part:

> "(a)   The first installment of temporary disability compensation shall be paid no later than the 14th day after the subject employer has notice or knowledge of the claim, *if the attending physician or nurse practitioner authorized to provide compensable medical services under ORS 656.245 authorizes the payment of temporary disability compensation.*"

(Emphasis added.) If there was medical authorization for payment of time loss benefits, Liberty's duty to begin paying claimant benefits for temporary disability began no later than 14 days after Liberty became aware of the accepted claim for surgical scarring on October 13, 2009, the date the board approved the parties' stipulation accepting the claim for surgical scarring.

The case thus narrows down to the question addressed in the board's order: Was there medical authorization for the payment of temporary disability? We explained in *Lederer v. Viking Freight, Inc.*, 193 Or App 226, 237, 89 P3d 1199, *adh'd to as modified on recons*, 195 Or App 94, 96 P3d 882 (2004), that an authorization of temporary disability benefits is legally sufficient under ORS 656.262(4) when an objectively reasonable insurer or self-insured employer would understand contemporaneous medical reports to signify approval excusing the worker from work. There are several reports in the record that reflect that claimant was disabled from work as a result of surgical scarring at the time the board approved the parties' stipulation and Liberty's acceptance of that condition. Of particular significance is the June 5, 2009, report by McNabb in which he addressed the surgical scarring condition and stated:

> "I have to concur with the findings of the IME regarding the MRI findings of some scar tissue formation surrounding the thecal sac. This is not truly arachnoiditis, and I do concur with his opinion that [claimant] does not have

arachnoiditis. Unfortunately, I do feel that she still has significant permanent partial disability due to her scarring and nerve damage that occurred associated with her radiculopathy."

Further, as the board found, on October 7, 2009, McNabb expressed the view that he did not believe that claimant would ever go back to work.

However, the board rejected claimant's argument that the medical record supported an award of temporary disability. The board explained:

"Having reviewed the medical reports from Dr. McNabb, which indicated that claimant's condition had reached maximum improvement in September 2008 and that any subsequent disability was permanent, we conclude that the record does not establish that claimant's disability was *temporary* when the insurer accepted the scarring condition in October 2009. In other words, even assuming that Dr. McNabb's comments were related to claimant's scarring condition, we are not persuaded that they constitute an authorization of temporary disability."

(Emphasis in original.) Reasoning that a reasonable insurer would not have interpreted McNabb's October 7, 2009, report as contemporaneous medical confirmation that claimant cannot perform her work because of *temporary* disability due to the compensable scarring condition, the board rejected claimant's request for temporary disability benefits.

We understand why the board resolved the issue as it did. It does appear that McNabb described claimant's disability as permanent, rather than temporary. It may be that, at the time Liberty accepted claimant's omitted condition claim for surgical scarring, her disability as a result of that condition was permanent, rather than temporary. Notably, McNabb had determined in September 2008 that the compensable conditions in claimant's underlying claim were medically stationary on September 18, 2008, and he subsequently opined, in December 2009, that claimant's surgical scarring condition had also become medically stationary on September 18, 2008. But the board's order, determining that claimant was not entitled to benefits for temporary disability simply because the medical evidence showed that her

disability was permanent fails to appreciate the different requirements for payment of temporary disability benefits at various stages of a claim.

Summarized generally, an entitlement to benefits for temporary disability potentially arises during three distinct periods: (1) at the outset of a claim (within 14 days after the employer's notice or knowledge) during the period for which there is an authorization for time loss, pending acceptance or denial of the claim (commonly referred to as interim time loss), *see* ORS 656.262(4)(a); (2) in the processing of an accepted claim (but before closure), during the period for which the attending physician continues to authorize time loss (commonly described as substantive time loss), *see* ORS 656.262(4)(a), (g); ORS 658.268(4); and (3) for a period of disability on an accepted claim during which the attending physician opines that the worker is medically stationary but before the employer or insurer has determined that the worker is medically stationary and closes the claim (commonly described as procedural time loss), *see* ORS 656.262(4)(a); ORS 656.268(4), (5)(a).

Claimant's accepted and open omitted medical condition claim for surgical scarring potentially implicates both the second and third types of temporary disability benefits. At the time the claim had been accepted, the contemporaneous medical record permitted only the conclusion that claimant was excused from working. But neither the nature of claimant's disability due to the surgical scarring (permanent or temporary) nor its medically stationary date had been determined. If the medical record showed that claimant was disabled from work as a result of the surgical scarring (an issue that the board did not decide), that circumstance triggered Liberty's obligation to begin paying temporary disability benefits on the newly accepted surgical scarring claim pursuant to ORS 656.262(4) and to continue paying those benefits until that condition was determined to be medically stationary.

"The authorization requirement does not speak of an entitlement to temporary disability benefits expressly authorized by the attending physician. Rather, once the attending physician has contemporaneously excused an injured worker from work, the payment of temporary disability

benefits is authorized, and the 'temporary disability compensation shall be paid' within 14 days. ORS 656.262(4)(a)."

*Lederer*, 193 Or App at 235. If and when Liberty determined that claimant's surgical scarring condition was medically stationary, the claim was subject to closure. ORS 656.268(1)(a). But, as of the date of the hearing, the claim remained open, and none of the bases set forth in ORS 656.268(4) for terminating temporary disability benefits had occurred.[1] We accordingly conclude that, contrary to the board's reasoning, the medical evidence that claimant's disability from the surgical scarring might be permanent did not preclude her entitlement to begin receiving temporary disability benefits on that claim. *See Lederer*, 193 Or App at 237 (although evidence showed that the worker had become medically stationary, as of the date of the hearing, the claim remained open; thus, the medically stationary date on the open claim had not yet been determined).

We therefore remand this case to the board for it to determine in the first instance whether McNabb's opinion that claimant was disabled from work related to the surgical scarring claim and, if so, the duration of claimant's entitlement to benefits for temporary disability. In light of our disposition, we do not address claimant's additional contentions that she was entitled to penalties and attorney fees.

Vacated and remanded.

---

[1] Under ORS 656.268(4), benefits for temporary disability "shall continue until

"(a) The worker returns to regular or modified employment;

"(b) The attending physician or nurse practitioner who has authorized temporary disability benefits * * * advises the worker and documents in writing that the worker is released to return to regular employment;

"(c) The attending physician or nurse practitioner who has authorized temporary disability benefits * * * advises the worker and documents in writing that the worker is released to return to modified employment, such employment is offered in writing to the worker and the worker fails to begin such employment."