Argued and submitted May 18, reversed and remanded October 12, 2016

In the Matter of the Compensation of
Jackie A. Scott, Claimant.

Jackie A. SCOTT,
*Petitioner,*

*v.*

LIBERTY NORTHWEST
INSURANCE CORPORATION
and Northwest Clinical Registry, Inc.,
*Respondents.*

Workers' Compensation Board
1100306; A160128

381 P3d 1069

Brian R. Whitehead filed the brief for petitioner.

Carrie Wipplinger argued the cause and filed the brief for respondents.

Before Sercombe, Presiding Judge, and Tookey, Judge, and DeHoog, Judge.

**TOOKEY, J.**

Claimant seeks review of an order of the Workers' Compensation Board reversing an order of an administrative law judge (ALJ) awarding compensation for temporary total disability and a penalty and related attorney fees under ORS 656.262(11). Reviewing the board's order for substantial evidence and errors of law, ORS 183.482(8)(a), (c), we conclude that the board erred, and we therefore reverse and remand for an award of a penalty under ORS 656.262(11) and related attorney fees.

Claimant, a certified nursing assistant, suffered a low back injury at work in January 2007. Liberty accepted a claim for a left L4-5 disc protrusion/extrusion, for which claimant had three surgeries in 2007. On September 18, 2008, claimant's treating physician, Dr. McNabb, determined that claimant's condition was medically stationery and released her for work. On October 16, 2008, employer closed the claim with an award of compensation for temporary total disability and permanent disability.

Despite having been released for work on the original low back claim, claimant has not worked since April 2007 and has continued to experience symptoms and to seek medical treatment for back pain and radiculopathy. In November 2008, she filed a new/omitted medical condition claim for "arachnoiditis." Liberty denied the claim, but requested an independent medical evaluation by Dr. Tsai, a neurosurgeon. After examining claimant, Tsai opined that claimant did not have arachnoiditis, but he noted scarring at the site of the surgeries.

McNabb concurred in Tsai's opinion that claimant did not have arachnoiditis; but unlike Tsai, McNabb believed that the surgical scarring was symptomatic. In a letter of June 5, 2009, he stated that claimant had "significant permanent partial disability due to her scarring and nerve damage that occurred associated with her radiculopathy." In a chart note of October 7, 2009, McNabb expressed the opinion that claimant would never be able to return to work due to chronic back pain and pain medication.

On October 13, 2009, the board approved a settlement confirming Liberty's denial of arachnoiditis but acceptance of a claim for surgical scarring. McNabb opined on December 16, 2009, that claimant's surgical scarring had been medically stationary since September 18, 2008.

Liberty did not begin paying benefits for temporary total disability on the surgical scarring claim, and claimant requested a hearing. An ALJ ordered Liberty to pay benefits for temporary disability for the period beginning September 18, 2008, through April 12, 2011, the date the hearing record closed. On Liberty's appeal, the board reversed the ALJ, explaining that the medical evidence at the time Liberty accepted the claim in October 2009 indicated that claimant's disability resulting from surgical scarring was permanent and therefore did not authorize payment of *temporary* disability compensation, as required by ORS 656.262(4)(a) (2009), *amended by* Or Laws 2015, ch 211, § 1 (2015) (providing that the first installment of temporary disability compensation is to be paid "no later than the 14th day after the subject employer has notice or knowledge of the claim, if the attending physician * * * authorizes the payment of temporary disability compensation").[1]

On judicial review, we vacated the board's order. *Scott v. Liberty Northwest Ins. Corp.*, 268 Or App 325, 331, 341 P3d 220 (2014). We explained that an insurer's obligation to pay temporary disability benefits on an accepted claim is triggered under ORS 656.262(4) when the claimant's physician has authorized the claimant to be off work, and that the obligation continues until the employer or insurer determines that the claimant's condition is medically stationary and closes the claim, or until a termination of benefits is otherwise authorized under ORS 656.268(4). We rejected the board's rationale that the medical record did not include an authorization for time loss because the medical evidence

---

[1] The applicable version of ORS 656.262(4)(a) is the version in effect in 2009. ORS 656.262(4)(a) (2009) provided, in part:

"The first installment of temporary disability compensation shall be paid no later than the 14th day after the subject employer has notice or knowledge of the claim, if the attending physician or nurse practitioner authorized to provide compensable medical services under ORS 656.245 authorizes the payment of temporary disability compensation."

described the disability as permanent rather than temporary. Citing *Lederer v. Viking Freight, Inc.*, 193 Or App 226, 237, 89 P3d 1199, *adh'd to as modified on recons*, 195 Or App 94, 96 P3d 882 (2004), we explained that medical reports need not expressly "authorize" time loss to trigger an insurer's obligation under ORS 656.262(4). *Scott*, 268 Or App at 330. Rather, that obligation is triggered "when an objectively reasonable insurer or self-insured employer would understand contemporaneous medical reports to signify approval excusing the worker from work." *Id.* at 330. We reasoned that the medical record included reports by McNabb from which it could be found that claimant had disability from the scarring condition and that, although McNabb's reports reflected that claimant's disability was permanent and that she was medically stationary, neither the nature of the disability nor its medically stationary date had been determined by Liberty. *Id.* We stated that, although it might ultimately have been determined that claimant's disability due to surgical scarring was permanent, "[a]t the time the claim had been accepted, the contemporaneous medical record permitted only the conclusion that claimant was excused from working." *Id.* We concluded that "evidence that claimant's disability from the surgical scarring might be permanent did not preclude her entitlement to begin receiving temporary disability benefits on that claim." *Id.* at 331. We therefore vacated and remanded the order for the board to determine in the first instance whether McNabb's opinion that claimant was disabled from work "related to the surgical scarring and, if so, the duration of claimant's entitlement to benefits for temporary disability." *Id.*

On remand, the board found that "an objectively reasonable carrier would have understood that [McNabb's October 7, 2009 chart note expressing the view that claimant would never be able to return to work] was excusing claimant from work due, at least in part, to pain from 'surgical scarring.'" The board further found that McNabb's authorization for claimant to be off work was open ended, because it was not limited to a specific period. Thus, the board concluded, "claimant was procedurally entitled to temporary disability benefits, payable from September 18, 2008 through April 12, 2011." But the board also determined that it

could not award claimant time loss for that period, because the surgical scarring claim had previously been closed by Liberty on October 1, 2012, without an award of temporary disability benefits, and the notice of closure had not been challenged by claimant and had become final.[2]

Claimant nonetheless requested a penalty under ORS 656.262(11)(a), and related attorney fees, contending that Liberty's failure to pay temporary disability compensation had been unreasonable.[3] The board rejected that contention, concluding that, based on the medical information available to Liberty at the time it accepted the claim (indicating that claimant's disability was permanent and that she was medically stationary), and before our opinion in *Scott* (explaining that the medical evidence of permanent disability was sufficient to trigger an obligation to pay procedural temporary disability benefits), Liberty had a legitimate doubt as to its liability for temporary disability benefits for the surgical scarring claim.

On judicial review, claimant contends that the board erred in rejecting her request for a penalty and attorney fees. In determining whether a refusal to pay compensation is unreasonable so as to give rise to an entitlement to a penalty and attorney fees, the question is whether, from a legal standpoint, the insurer had a legitimate doubt as to its liability. *Providence Health System v. Walker*, 252 Or App 489, 505, 289 P3d 256 (2012), *rev den*, 353 Or 867 (2013); *Brown v. Argonaut Insurance Company*, 93 Or App 588, 591, 763 P2d 408 (1988). The question whether an insurer had a legitimate doubt as to its liability is a factual determination that we review for substantial evidence. *Walker*, 252 Or App at 505-06. Thus, in reviewing the board's determination, we

---

[2] On judicial review, claimant does not dispute the board's conclusion that the closure of the claim precluded an award of time loss benefits. *See Lebanon Plywood v. Seiber*, 113 Or App 651, 654, 833 P2d 1367 (1992) (board lacks authority to award temporary disability benefits that would constitute an overpayment).

[3] ORS 656.262(11)(a) (2009), *amended by* Or Laws 2015, ch 521, § 2 provided, in part:

"If the insurer or self-insured employer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees assessed under this section."

consider whether substantial evidence supports the board's finding that, at the time of Liberty's acceptance of the claim, the medical record and the case law left room for legitimate doubt as to Liberty's liability for temporary total disability benefits. *Id.*

Claimant contends that the board's finding in its order on remand that "an objectively reasonable carrier would have understood that [McNabb] was excusing claimant from work due, at least in part, to pain from 'surgical scarring,'" precluded the board's finding that Liberty had a legitimate doubt, from a legal standpoint, as to its obligation to pay temporary disability benefits. That is because, claimant contends, under well-settled law, McNabb's statements that claimant was disabled due to the surgical scarring triggered Liberty's duty under ORS 656.262(4)(a) to pay time loss benefits until the claim was closed, whether or not the disability was temporary.

Liberty responds that the board's finding is supported by substantial evidence because, although we determined in *Scott* that Liberty had a *legal* obligation to begin paying temporary disability, before this court's decision in *Scott*, there was nonetheless legitimate doubt, from a legal standpoint, as to whether the ambiguous medical record triggered an obligation to pay temporary disability benefits.[4]

As we explained in *Scott*, in order to trigger an obligation to pay time loss, the attending physician need not expressly authorize benefits. Rather, once the attending physician "has contemporaneously excused an injured worker from work, the payment of temporary disability benefits is authorized[.]" 268 Or App at 330-31. That statement in *Scott* was not a resolution of an unsettled question of statutory construction. It had been the state of the law at least since our opinion in *Lederer*, 193 Or App at 237, where we said that an insurer's obligation to pay benefits for time loss begins "when an objectively reasonable insurer

---

[4] Additionally, Liberty asserts that McNabb's opinion in a chart note expressing doubt that claimant would be able to return to work did not unambiguously relate claimant's disability due to the surgical scarring. But that assertion is inconsistent with the board's finding that, at the time Liberty accepted the claim, an objectively reasonable carrier would have understood that McNabb was excusing claimant from work due, at least in part, to pain from surgical scarring.

\*\*\* would understand contemporaneous medical reports to signify" approval excusing the claimant from work. Here, in its order on remand, the board found that, at the time Liberty accepted claimant's claim for surgical scarring, "an objectively reasonable carrier would have understood that [McNabb] was excusing claimant from work due, at least in part, to pain from 'surgical scarring.'" We agree with claimant that, in light of that finding, Liberty could not have had a legitimate doubt from a legal standpoint as to its liability to begin paying benefits for temporary disability at the time it accepted the claim for surgical scarring. We therefore reverse the board's order and remand for an award of a penalty under ORS 656.262(11) and attorney fees.

Reversed and remanded.