Argued and submitted March 3, 2016, affirmed August 23, 2017

In the Matter of the Compensation of
Brian Snyder, Claimant.

Brian SNYDER,
*Petitioner,*

*v.*

SAIF CORPORATION
and Morrow County,
*Respondents.*

Workers' Compensation Board
1304318; A158484

402 P3d 743

Dale C. Johnson argued the cause and filed the brief for petitioner.

Julie Masters argued the cause and filed the brief for respondents.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

**LAGESEN, J.**

Claimant petitions for review of a final order of the Workers' Compensation Board. ORS 656.298(1). The issue before us is whether claimant is entitled to a penalty and attorney fees under ORS 656.262(11) on the ground that SAIF Corporation "unreasonably delay[ed] * * * to pay compensation" when it initially closed claimant's claim for the accepted condition of central cord syndrome without an award of impairment. SAIF did so even though claimant had undergone a spinal surgery that, under the applicable administrative rules, resulted in impairment as a matter of law—an error that SAIF later corrected. The board concluded that claimant was not entitled to the requested penalty and fees because, at the time that SAIF initially closed the claim, the information before SAIF gave rise to a "legitimate doubt regarding its liability for permanent impairment for the cervical cord syndrome." *See Hamilton v. Pacific Skyline, Inc.*, 266 Or App 676, 680-81, 338 P3d 791 (2014) (explaining that an insurer's delay in payment is not unreasonable if, in view of the information available to the insurer, the insurer had a legitimate doubt about its liability). On review to determine whether the board applied the correct legal standard and, if so, whether substantial evidence supports the board's finding that SAIF had a legitimate doubt about its liability, *Brown v. Argonaut Insurance Company*, 93 Or App 588, 591, 763 P2d 408 (1988), we affirm.

Claimant does not assign error to the board's findings of historical fact. We therefore draw our statement of the facts from the board's order and, to the extent that the board adopted the factual findings of the administrative law judge (ALJ) who initially heard this matter, from the ALJ's order. *McDowell v. Employment Dept.*, 348 Or 605, 608, 236 P3d 722 (2010).

Claimant injured his right knee at work. SAIF thereafter accepted claimant's workers' compensation claim for workers' compensation benefits for a right knee sprain. Claimant's knee injury required surgery, and that surgery caused claimant to suffer new conditions: bradycardia, hypoxemia, and central cord syndrome. Claimant had

cervical surgery for that central cord syndrome shortly after his knee surgery. SAIF later issued an amended notice of acceptance accepting the bradycardia and hypoxemia; SAIF initially denied the claim as to central cord syndrome. An ALJ overturned SAIF's denial, concluding that the central cord syndrome was a compensable consequential condition of claimant's workplace injury. Consistent with the ALJ's ruling, SAIF amended its notice of acceptance to include central cord syndrome.

After accepting the central cord syndrome, SAIF, which had closed claimant's claim with respect to the other accepted conditions, then had claimant evaluated by two medical examiners, Drs. Dordevich and Bald, to obtain closing information about that condition. Those doctors prepared a report in which they opined that, as to the central cord syndrome, claimant was medically stationary without impairment. Claimant's attending physician, Dr. Earl, signed a concurrence letter, stating that he concurred with Dordevich and Bald that the central cord syndrome was medically stationary and that claimant had no impairment with respect to the central cord syndrome. SAIF then reclosed the claim. In so doing, it awarded no additional impairment in connection with the central cord syndrome.[1]

Claimant sought reconsideration with the Appellate Review Unit (ARU) and, in support of that request, submitted a letter in which Earl indicated that he would not have concurred in the examiners' findings of no impairment if he had known that the applicable administrative rules required that an impairment value be assigned to claimant's central cord syndrome because claimant had undergone spinal surgery for·that condition. Noting Earl's change of opinion, the ARU concluded that there was insufficient information to close the claim and issued an Order on Reconsideration directing that SAIF's notice of closure be rescinded. SAIF later reclosed the claim, this time awarding impairment in connection with the accepted central cord syndrome based on the fact that claimant had spinal surgery for the accepted central cord syndrome and OAR 436-035-0350(2), which

---

[1] Claimant previously had been awarded seven percent whole person impairment.

required the assignment of an impairment value for claimant's spinal surgery.

Once SAIF reclosed the claim, claimant requested a hearing on entitlement to a penalty and attorney fees under ORS 656.262(11), among other things. Claimant contended that, by initially closing his claim without awarding impairment based on his spinal surgery, SAIF unreasonably delayed paying compensation within the meaning of ORS 656.262(11)(a). The ALJ concluded that claimant was entitled to the requested penalty and fees under ORS 656.262(11). SAIF appealed to the board, arguing that (1) claimant was seeking the requested penalty and fees in a procedurally improper manner and (2) ORS 656.268 provides the exclusive source of authority for a penalty and attorney fees in connection with an unreasonable claim closure and, therefore, claimant could not obtain a penalty under ORS 656.262.

The board reversed the ALJ's decision without addressing SAIF's arguments about the procedural propriety of claimant's request or the applicability of ORS 656.262 in the context of claim closure. Instead, the board found that the medical evidence before SAIF at the time it initially closed the claim with respect to the central cord syndrome did not attribute claimant's cervical surgery to the central cord syndrome and otherwise indicated that claimant had no impairment from the accepted central cord syndrome. Because that medical evidence did not clearly connect the cervical surgery to the central cord syndrome, thereby putting SAIF on notice that claimant was entitled to impairment as a matter of law for that surgery, and because that evidence otherwise uniformly indicated that claimant suffered no impairment, the board found that SAIF had a legitimate doubt as to whether it was liable for impairment from the central cord syndrome. Based on that finding of legitimate doubt, the board concluded that claimant was not entitled to a penalty under ORS 656.262(11).

On review, claimant assigns error to the board's determination that SAIF had a legitimate doubt about its liability for impairment for the central cord syndrome. The gravamen of claimant's argument is that the evidence

submitted in the administrative litigation that led to SAIF's acceptance of the central cord syndrome, and the ALJ's decision in that matter, precludes the conclusion that SAIF had a legitimate doubt that the cervical surgery was for the central cord syndrome and, thus, precludes the conclusion that SAIF had a legitimate doubt as to whether it was liable for impairment as a matter of law based on that surgery. Finally, claimant argues that the board's finding of legitimate doubt is not supported by substantial evidence or substantial reason.

In response, SAIF argues that claimant "did not properly preserve the issue of entitlement to penalties and attorney fees," reiterating the two arguments that the board did not reach. In particular, SAIF reiterates its contention that the only procedurally proper way for claimant to obtain a penalty and attorney fees in connection with SAIF's allegedly unreasonable claim closure was for claimant to appeal the Order on Reconsideration that rescinded the initial notice of closure addressing the central cord syndrome. SAIF also argues that claimant's issues "are not legally preserved" in part because claimant is seeking a penalty and attorney fees under ORS 656.262(11), whereas, in SAIF's view, ORS 656.268 is "the only statute that directly addresses the situation when an insurer fails to award sufficient permanent disability in a claim closure." On the merits, SAIF contends that the evidence underlying that decision was not within the scope of evidence that SAIF was permitted to consider in closing the claim, that the administrative decision that led to SAIF's acceptance of the central cord syndrome is not "law of the case," and that substantial evidence and substantial reason support the board's order.

We start with SAIF's contention that claimant did not preserve the issues he raises on judicial review. As a general matter, an assigned error is preserved for our review if the issue underlying the assignment of error was raised in the lower tribunal in a manner that gave all opposing parties a fair opportunity to respond and make their own cases with respect to the issue, and that gave the lower tribunal a fair opportunity to resolve the issue and avert the error claimed before us. *Peeples v. Lampert,* 345 Or 209, 219-21, 191 P3d

637 (2008). "What is required of a party to adequately present a contention to the trial court can vary depending on the nature of the claim or argument; the touchstone in that regard, ultimately, is procedural fairness to the parties and to the trial court." *Id.* at 220.

Here, the record reflects that claimant raised the issue of his entitlement to a penalty and attorney fees under ORS 656.262(11) below in a way that preserved the issue for our review. It was the central issue below, SAIF had a fair opportunity to respond, and the ALJ and the board both ruled on it. SAIF does not dispute any of these points. Instead, SAIF argues that claimant did not preserve the issue of his entitlement to a penalty and attorney fees because, in SAIF's view, (1) he has employed a legally impermissible procedure to seek a penalty and attorney fees and, for that reason, is procedurally barred from obtaining the penalty and fees that he seeks in this proceeding; and (2) ORS 656.262(11) does not authorize the award of a penalty and attorney fees in connection with an alleged unreasonable claim closure because ORS 656.268 provides the exclusive source of authority for a penalty and attorney fees for such unreasonable conduct. Neither of those arguments suggests that claimant's assignments of error are not preserved. That is, SAIF's arguments do not address the principles that are relevant to the concept of preservation. Instead, they, in effect, present potential alternative grounds for affirmance—something for us to consider if we were to conclude that the board erred in rejecting claimant's penalty claim for the reasons that it did. Accordingly, because the requirements of preservation were, in fact, satisfied in this case, we reject SAIF's argument that claimant has not preserved the issues he now raises.

As to the merits, we assume without deciding, as did the board, that ORS 656.262(11)(a) applies in the context of allegedly unreasonable claim closures. That provision entitles a workers' compensation claimant to the assessment of a penalty and attorney fees against an insurer if the insurer "unreasonably delays" paying compensation due:

> "If the insurer or self-insured employer unreasonably delays or unreasonably refuses to pay compensation, attorney fees

or costs, or unreasonably delays acceptance or denial of a claim, the insurer or self-insured employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees assessed under this section."

ORS 656.262(11)(a). An insurer "unreasonably delays" payment of compensation for purposes of ORS 656.262(11) if, at the time compensation is due, the insurer had no "legitimate doubt" regarding its liability for the compensation. *Scott v. Liberty Northwest Ins. Corp.*, 281 Or App 516, 520, 381 P3d 1069 (2016). Whether an insurer has a legitimate doubt or acts unreasonably must "be considered in the light of all the evidence available to the insurer." *Brown*, 93 Or App at 591.

In this case, the question is whether the board correctly concluded that SAIF had a legitimate doubt at the time it closed the claim with respect to the central cord syndrome that claimant was entitled to an impairment award for that condition. As the parties appear to agree, that question reduces to whether the board correctly concluded that SAIF had a legitimate doubt that claimant's cervical surgery was for the central cord syndrome. That is because the applicable administrative rules provide as a matter of law that the type of surgery that claimant had must be assigned an impairment value. OAR 436-035-0350(2). Thus, if SAIF had no legitimate doubt that the surgery was for the accepted central cord syndrome, it had no legitimate doubt that claimant was entitled to impairment, given the requirements of the administrative rule. As noted, the question whether an insurer had a legitimate doubt about its liability is one of fact and we, therefore, review the board's legitimate doubt determination for substantial evidence where, as here, there is no contention that the board applied an incorrect legal standard. *Scott*, 281 Or App at 520-21.

We turn to claimant's various arguments as to why the board erroneously determined that SAIF had a legitimate doubt that the cervical surgery was for the accepted central cord syndrome. Claimant asserts that the medical evidence introduced in the administrative litigation that led to SAIF's acceptance of the central cord syndrome—primarily, a report by Dr. Puziss—establishes that claimant's cervical surgery was for the central cord syndrome. Claimant

further contends that the board's finding of legitimate doubt is not supported by substantial evidence because it is not one that a reasonable person could reach on the record, if Puziss's report is taken into account. ORS 183.482(8)(c) ("Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding.").

That argument fails for two distinct reasons. First, SAIF was required by statute and administrative rule to base its decision on impairment at closure on the findings contained in the Dordevich and Bald report and Earl's concurrence. ORS 656.245(2)(b)(C) (providing that "only a physician * * * who is serving as the attending physician at the time of claim closure may make findings regarding the worker's impairment for the purpose of evaluating the worker's disability"); OAR 436-035-0007(5), (6) (impairment at time of closure must be based on the objective findings of the attending physician and may be based on the objective findings made by consulting physicians or other medical personnel "if the worker's attending physician concurs with the findings"); *see generally SAIF v. Owens*, 247 Or App 402, 412-15, 270 P3d 343 (2011), *rev den*, 352 Or 170 (2012) (discussing the statutory and rule-based limitations on the evidence that may be considered in evaluating impairment). Because of those limits on the medical evidence that an insurer can consider at closure, Puziss's opinion in the prior litigation was not medical evidence that SAIF could permissibly consider in assessing impairment at closure. Consequently, it does not bear on the reasonableness of SAIF's assessment of impairment at closure. Second, petitioner's argument faces a more fundamental hurdle: Puziss's opinion was not introduced into the record in this case. As a result, we cannot consider it in evaluating whether the board's finding that SAIF had a legitimate doubt about its liability for impairment is supported by substantial evidence.

Claimant next asserts that the ALJ decision in the previous administrative litigation is "law of the case" establishing that the cervical surgery was for the accepted central cord syndrome and that, as a result of that "law of the case," SAIF is precluded from asserting that it has a legitimate

doubt that the cervical surgery was for the accepted central cord syndrome. But, as SAIF points out, for that doctrine to apply, there must have been a prior ruling by an *appellate* court in the same case on the issue in question. *Reynolds v. USF Reddaway, Inc.*, 283 Or App 21, 24, 394 P3d 998 (2016), *rev den*, 361 Or 311 (2017); *see also Kennedy v. Wheeler*, 356 Or 518, 531, 341 P3d 728 (2014) ("The term 'law of the case' is best reserved for use in the context in which a party seeks to relitigate an appellate decision."). The ALJ ruling on which claimant relies is not an appellate decision. For that reason alone, we reject claimant's assertion that the "law of the case" doctrine resolves the question of whether the board was correct to find that SAIF had a legitimate doubt that the cervical surgery was for the central cord syndrome.

That does not mean that the ALJ decision is irrelevant to the legitimate doubt determination at issue in this case. Although an insurer is limited with respect to the *medical* evidence it permissibly can consider in assessing impairment at closure of a claim, that does not mean that an insurer is at liberty to disregard procedural information about the claim that bears on the scope of the claim being closed, including pertinent decisions resulting from prior adjudications about the claim to which the insurer was party. Taking this case as an example, if the procedural information available to SAIF at the time of closure established that the cervical surgery had been adjudicated to be for the accepted central cord syndrome, that would preclude a finding that SAIF had a legitimate doubt regarding claimant's entitlement to impairment. Under such circumstances, it would not be reasonable for SAIF to fail to award the impairment required by the applicable administrative rules for a surgery that had been adjudicated to be for the accepted condition. Thus, in assessing whether substantial evidence supports the board's finding that SAIF had a legitimate doubt about whether the cervical surgery was for the accepted central cord syndrome, we consider not only the medical evidence that the board found was before SAIF at the time of closure but also the ALJ decision, and any other procedural information about the claim that SAIF possessed at the time of closure, to the extent that information is included in the record.

Taking into account that medical evidence and procedural information, we conclude that substantial evidence supports the board's finding. As the board expressly recognized, nothing in the Dordevich and Bald report or Earl's concurrence clearly connects the cervical surgery to the accepted central cord syndrome. Beyond that, the ALJ's opinion would not have made things clearer to SAIF, or so a reasonable factfinder could find. Although the opinion notes that both Puziss and Earl opined that the cervical surgery was for the central cord syndrome brought on by claimant's knee surgery, the opinion also notes the existence of conflicting medical opinions as to whether the surgery was necessitated by claimant's preexisting cervical conditions. And, ultimately, the opinion does not adjudicate the question of whether the cervical surgery was for the central cord syndrome brought on by claimant's knee surgery or, instead, was for the other preexisting cervical conditions. Instead, the only issue resolved by the opinion was whether the central cord syndrome was a compensable consequential condition. Under those circumstances, a reasonable person could make the finding that SAIF had a legitimate doubt that the cervical surgery was for the accepted central cord syndrome.

Claimant also contends that SAIF paid for medical services and temporary disability benefits connected to the central cord syndrome, including benefits that claimant contends were associated with the cervical surgery, and argues that the payment of benefits compels the inference SAIF had no legitimate doubt about the surgery's connection to the accepted central cord syndrome, making the board's finding unreasonable. The inference claimant advocates, however, is one that is not permitted by statute, as claimant appears to recognize. As claimant acknowledges, ORS 656.262(10) states, in part: "Merely paying or providing compensation shall not be considered acceptance of a claim or an admission of liability." In any event, in view of the statute, the fact that SAIF may have paid benefits in connection with the cervical surgery does not operate to make the board's finding that SAIF had a legitimate doubt that the cervical surgery was for the accepted central cord syndrome an unreasonable one.

Finally, claimant argues that the board's decision is not supported by substantial reason. We disagree with that assertion and reject it without further discussion.

In sum, based on the evidence in the record about the medical evidence that SAIF could permissibly consider at the time that it closed the claim, and the procedural information known to SAIF at the time of closure, a reasonable person could find that SAIF had a legitimate doubt that the cervical surgery was for the accepted central cord syndrome and, thus, a legitimate doubt as to whether it was liable for impairment for that surgery under the applicable administrative rules. We therefore affirm the board's order.

Affirmed.