Argued and submitted September 10, 2014, reversed and remanded
April 20, 2016

In the Matter of the Compensation of
Jeffrey S. Casey, Claimant.
Jeffrey S. CASEY,
*Petitioner,*

*v.*

CITY OF PORTLAND,
*Respondent.*

Workers' Compensation Board
1004578; A152297

372 P3d 571

James S. Coon argued the cause for petitioner. With him on the briefs was Swanson, Thomas, Coon & Newton.

Ian M. Leitheiser argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Egan, Judge.*

ARMSTRONG, P. J.

---

* Hadlock, C. J., *vice* Nakamoto, J. pro tempore; Egan, J., *vice* Haselton, S. J.

## ARMSTRONG, P. J.

Claimant injured his left shoulder in 2002 while working for the City of Portland (employer) and filed a claim for workers' compensation benefits. In addition to "boilerplate" language stating that claimant's rights would be lost if he did not take certain actions within specified timeframes, employer's claim denial also included this statement: "If in the future you are diagnosed with a condition that you or your physician believe to be related to this exposure with [employer], your claim will be reconsidered for possible acceptance." Notwithstanding that statement, employer denied claimant's subsequent claim, in 2010, on the ground that it was precluded by the 2002 denial. The Workers' Compensation Board ultimately upheld that denial, agreeing that claim preclusion barred claimant's 2010 claim. On judicial review of the board's order, we conclude that that was legal error; accordingly, we reverse and remand. ORS 183.482(8).

The facts pertinent to our resolution of the issue on review are few and undisputed. Claimant injured his left shoulder at work on February 27, 2002, and filed a workers' compensation claim for that injury.[1] Employer issued a denial of claimant's claim on May 14, 2002 (the 2002 denial). The denial listed the "Claimed Conditions" as "left shoulder" and stated, as relevant:

"Under current Workers' Compensation law it is not the accident or exposure that is accepted in a workers' compensation claim. Rather what is accepted is the diagnosed condition or disease that is proven by objective medical findings to have been the result of that accident or exposure.

"We are required to either accept or deny a new workers' compensation claim within 60 days of the employer's date of knowledge of that claim. We are approaching our time limit on your claim and as of this date you have not been diagnosed with any condition that is supported by objective findings that the condition is related to your claimed exposure on the job.[2]

---

[1] At the time, claimant was a "Utility Worker II"; he later (August 2005) changed positions to "Auto Equipment Operator."

[2] As the administrative law judge and the parties recognize, the proposition that a diagnosis was required was mistaken. *See, e.g., Boeing Aircraft Co. v. Roy,*

"Therefore we must respectfully deny this claim. We do agree that it was wise for you to have a medical checkup after your exposure and we agree to pay for your medical office visit of March 19, 2002 in connection with your exposure as diagnostic and precautionary.

"We are required by State law to add the following paragraph to this letter:

"**IF YOU THINK THIS DENIAL IS NOT RIGHT, WITHIN 60 DAYS AFTER YOU ARE NOTIFIED OF THIS DENIAL YOU MUST FILE A LETTER WITH THE WORKERS' COMPENSATION BOARD[.] YOUR LETTER MUST STATE THAT YOU WANT A HEARING, YOUR ADDRESS AND THE DATE OF YOUR ACCIDENT, IF YOU KNOW THE DATE. \* \* \* IF YOU DO NOT FILE A REQUEST WITHIN 60 DAYS, YOU WILL LOSE ANY RIGHT YOU MAY HAVE TO COMPENSATION UNLESS YOU CAN SHOW GOOD CAUSE FOR DELAY BEYOND 60 DAYS. AFTER 180 DAYS, ALL YOUR RIGHTS WILL BE LOST. \* \* \***

"*If in the future you are diagnosed with a condition that you or your physician believe to be related to this exposure with [employer], your claim will be reconsidered for possible acceptance.*"

(Boldface and capitalization in original; emphasis added.) In the remainder of this opinion, we refer to the boldface text as the "boilerplate language" and the italicized sentence as the "reconsideration provision."

Claimant did not request a hearing, and there is no record of any relevant medical treatment from December 2002 until May 2010.

Eight years later, in May 2010, claimant sought medical treatment for worsening left shoulder pain, and, on May 24, 2010, he filed an aggravation claim of the February 27, 2002, injury; he later filed a new or omitted condition claim.[3] He eventually underwent surgery on his

___

112 Or App 10, 15, 827 P2d 915 (1992) ("A claimant need not prove a specific diagnosis if he proves that his symptoms are attributable to his work."). That purported error is ultimately immaterial to our analysis on review.

   [3] Specifically, on October 13, 2010, claimant initiated a new or omitted medical condition claim for "Labral Tear Left Shoulder." On October 22,

left shoulder—specifically, "a left shoulder arthroscopy and decompression of posterior paralabral cyst"—on August 12, 2010, and was released to full duty with no restrictions on September 29, 2010.

Employer denied claimant's 2010 claim on the ground that his 2002 claim had been denied, and that denial had become final.[4] Claimant requested a hearing before an administrative law judge (ALJ), who upheld the denial. The ALJ agreed with employer that, "because the May 14, 2002 denial became final by operation of law," the 2010 claim was barred by claim preclusion. As relevant here, the ALJ reasoned that, although the reconsideration provision—*viz.*, "If in the future you are diagnosed with a condition that you or your physician believe to be related to this exposure with [employer], your claim will be reconsidered for possible acceptance"—"could be interpreted as allowing claims for later, as yet undiagnosed, conditions, the general and complete claim denial became final by operation of law when claimant failed to request a hearing." The ALJ pointed out that "[t]he denial contained the required language that, if claimant did not request a hearing within 60 days, 'you will lose any right you may have to compensation' (unless he could show 'good cause'), and that after 180 days, 'all your rights will be lost.'" Thus, according to the ALJ, the "seemingly inviting language" of the reconsideration provision "did not 'revive' claimant's rights with regard to a denial that had become final after 180 days, in contradiction of

claimant filed another "801 form for the February 27, 2002 injury," asserting in a cover letter a new claim for a labral tear. And, on October 29, 2010, claimant filed an "Amended Notice of Injury" to incude "Paralabral cyst" as part of his new claim. We refer to claimant's 2010 filings collectively as the 2010 claim.

[4] In that regard, the 2010 denial stated:

"Your February 27, 2002, claim was denied May 14, 2002. That denial became final. Therefore, we must respectfully deny your claim for an aggravation of the February 27, 2002, claim. In the alternative, if the May 24, 2010, Form 827 is construed as a new claim for compensation, that claim is also denied on the basis of insufficient evidence of a compensable new injury or occupational disease."

The parties did not below, and do not now, advance any distinction between the aggravation claim and the new condition claim (which was treated as having been "de facto" denied); accordingly, neither do we.

[ORS 656.319[5]].” The board adopted and affirmed the ALJ's order in its entirety.

On judicial review, claimant contends that the board erred in concluding that claim preclusion barred his 2010 claim, because the reconsideration provision in the 2002 denial entitled him to consideration of his 2010 claim on the merits, notwithstanding that he did not challenge the earlier denial. In claimant's view, the 2002 denial promises that “his claim would be reconsidered if he were diagnosed in the future with a condition that he or his physician believed to be related to his accident,” that promise became final, and employer is bound by it. In short, claimant contends that, because the 2002 denial “expressly reserved his right to have [his] later claim 'reconsidered for possible acceptance,'” claim preclusion does not bar his 2010 claim.[6]

Employer, by contrast, agrees with the board that, because claimant did not timely challenge the 2002 claim denial, it became final by operation of law, ORS 656.319, and therefore bars litigation of claimant's 2010 claim under principles of claim preclusion. Employer contends that the “exception” to those principles relied on by claimant does not apply in these circumstances.[7]

Thus, as framed by the parties on review, the question we must address is this: Did the board err in determining that claim preclusion operated to bar claimant's 2010 claim, given the reconsideration provision included in the 2002 denial? For the reasons that follow, we conclude that it did.

---

[5] ORS 656.319(1) provides:

"With respect to objection by a claimant to denial of a claim for compensation under ORS 656.262, a hearing thereon shall not be granted and the claim shall not be enforceable unless:

"(a) A request for hearing is filed not later than the 60th day after the mailing of the denial to the claimant; or

"(b) The request is filed not later than the 180th day after mailing of the denial and the claimant establishes at a hearing that there was good cause for failure to file the request by the 60th day after mailing of the denial."

[6] As employer correctly notes, the focus of claimant's argument has shifted over time; however, employer does not dispute—and we agree—that claimant's argument on review is sufficiently preserved for our review.

[7] Employer raises other arguments, which we discuss briefly below. 277 Or App at 583, 583 n 10.

In *Drews v. EBI Companies*, 310 Or 134, 140, 795 P2d 531 (1990), the Supreme Court articulated the rule of claim preclusion as follows:

> "'[A] plaintiff who has prosecuted one action against a defendant through to a final judgment * * * is barred [*i.e.*, precluded] * * * from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first, seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.'"

(Quoting *Rennie v. Freeway Transport*, 294 Or 319, 323, 656 P2d 919 (1982) (brackets and omissions in *Drews*).) Or, more concisely, "[c]laim preclusion bars litigation of a claim based on the same factual transaction that was or could have been litigated between the parties in a prior proceeding that has reached a final determination." *Liberty Northwest Ins. Corp. v. Rector*, 151 Or App 693, 698, 950 P2d 387 (1997) (internal quotation marks and brackets omitted). Both claim and issue preclusion apply in the workers' compensation context.[8] *Drews*, 310 Or at 142. However, as the court also explained in *Drews*, those rules are subject to a number of exceptions, among them this one:

> "Where the decision maker expressly reserves for a party the right to maintain a second action or proceeding at the time the first determination is made, there is no preclusive effect."

*Id.* at 141 (citing *Restatement (Second) of Judgments* § 26(1)(b) (1982)).

Claimant contends that such a "reservation" is precisely what happened here. The 2002 claim denial expressly states that claimant's claim "will be *reconsidered for possible acceptance*" if claimant later is diagnosed with a condition

---

[8] Finality for claim and issue preclusion purposes is, in the administrative context, including workers' compensation, generally governed by statute. *Drews*, 310 Or at 142-43. The workers' compensation statutory scheme "indicates that the finality requisite for claim or issue preclusion, against the worker, occurs only when a worker fails to timely request a hearing after a claim denial, a determination order, or a notice of claim closure, ORS 656.319, or by failure to file a timely appeal to the Board, ORS 656.289(3), or the courts. ORS 656.295(8)." *Id.* at 149 (footnote omitted).

that claimant or his physician believes is related to the 2002 injury. (Emphasis added.) Thus, at the time of the first determination (the denial), employer expressly reserved for claimant his right to maintain a second action or proceeding (reconsideration). And, consequently, the denial can have "no preclusive effect" as to that second proceeding.

Employer responds that the "reservation of rights" exception to claim preclusion applies only to a *judicial* reservation of rights, and thus it has no application to this case. As support for that proposition, employer points out, first, that the "source" of the court's announcement of the exception in *Drews*—that is, the *Restatement* itself—references a reservation of rights by a *court. See Restatement* § 26(1)(b) (preclusion does not apply to extinguish a claim when "[t]he *court* in the first action has expressly reserved the plaintiff's right to maintain the second action" (emphasis added)). Indeed, employer argues that claimant "misstates the nature of a reservation * * * by citing the *Drews* treatment of the concept rather than the source itself." That position is untenable.

As noted, in *Drews*, the Supreme Court plainly held that claim preclusion applies to workers' compensation proceedings. 310 Or at 142. Drawing on the *Restatement*, the court also described some of the applicable exceptions to that rule, restating them in terms that would be coherent in the workers' compensation arena and that would seemingly *not* limit their application to judicial decisions. For example, in describing the "reservation of rights" exception to claim preclusion, the court recognized that the relevant actor is the "decision maker" rather than the "court"; the court also referred to the potentially preclusive proceeding as the "first *determination*" rather than the first "action," or "judgment," or other term that might suggest it was limited to a *judicial* decision. *Drews*, 310 Or at 141 (emphasis added). In other words, the court described how the *principle* embodied in the *Restatement* exception would apply in the workers' compensation context. Hence, although the court had no reason to apply the "reservation of rights" exception in deciding *Drews*—and thus its discussion of the exception is technically *dictum*—it certainly suggests that the court did not believe it to be limited to judicial proclamations.

Employer's only other source of support for the distinction that it proposes is a footnote in *Aguirre v. Albertson's, Inc.*, 201 Or App 31, 117 P3d 1012 (2005), in which we described the "reservation of rights" exception under *Restatement* section 26(1)(b) as a "judicial" reservation. In that case, the issue was whether a prior federal judgment precluded a state court action, and our footnote was in reference to the plaintiff's argument that claim preclusion should not apply because of the so-called "waiver by acquiescence" exception outlined in *Restatement* section 26(1)(a) (stating that a plaintiff may pursue multiple actions of the same claim when "[t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein"). In clarifying that the two exceptions are separate and distinct, we stated, in part:

> "A defendant's acquiescence is described in section 26(1)(a). A court's express withholding or reservation of a claim in its judgment is a separate exception, set forth in section 26(1)(b). In other words, acquiescence and judicial reservation of the claim are different exceptions, not cumulative criteria of the same one."

*Aguirre*, 201 Or App at 55 n 22. That was an apt description given the context in which the exception was being discussed—that is, in the fairly typical circumstance of determining the possible preclusive effect of a prior *judgment* of a court—and it says nothing about the proper application of the exception in the context of an administrative scheme such as workers' compensation. In other words, we disagree with employer that we have, in *Aguirre*, "recognized" that the reservation of rights exception to claim preclusion described in *Drews* and taken from *Restatement* section 26(1)(b) is limited to circumstances in which a *court* expressly reserves a party's right to maintain a second action. *See also Aguirre*, 201 Or App at 47-48 ("Claim preclusive effect is given to consent decrees and judgments entered by stipulation or settlement, as well as to those that follow after a full adjudication of the merits.").

Having concluded that the exception *can* apply here, we next must determine if it *does* apply. That is, we must decide whether the reconsideration provision was an express reservation of claimant's right to have his claim

reconsidered, notwithstanding what would otherwise be the preclusive effect under ORS 656.319 of the 2002 denial.

As noted, the board in effect concluded that the reconsideration provision was not such a reservation of rights, adopting the reasoning of the ALJ that the boilerplate language instructed claimant that his rights to compensation would be lost if he did not timely request a hearing and the reconsideration provision did not "revive" those rights.

The difficulty with that reasoning is that it gives *no* effect to the reconsideration provision. And, we generally construe legal documents so as to give effect to all of their provisions. *See, e.g.*, ORS 42.230 ("In the construction of an instrument, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted; *and where there are several provisions or particulars, such construction is, if possible, to be adopted as will give effect to all.*" (Emphasis added.)); ORS 174.010 (same with respect to construction of statutes). Moreover, we have held that "[e]mployers are bound by the express language of their denials." *Tattoo v. Barrett Business Service*, 118 Or App 348, 351, 847 P2d 872 (1993). And, this is not a circumstance where, in context, the language of the denial has only one possible meaning. *See Mills v. The Boeing Co.*, 212 Or App 678, 683, 159 P3d 375 (2007) ("If, in context, the language of a denial has only one possible meaning, it must be read consistently with that contextual meaning.").

However, the converse may be true as well—that is, if we were to construe the reconsideration provision to allow consideration of claimant's 2010 claim, notwithstanding the boilerplate language indicating that all of claimant's rights to challenge the 2002 denial are forfeited if not asserted within the specified timeframes, would that render the boilerplate language superfluous?

Claimant proposes a reading that, he contends, would harmonize the two provisions. Specifically, he argues that the boilerplate language "you will lose any right you may have to compensation" and "all your rights will be lost" should fairly be construed to refer only to the rights

claimants had *at the time of the denial*, because, otherwise, it "flatly contradict[s] the sentence that explicitly reserved his rights to future consideration of a later-diagnosed condition." Claimant also contends that, even if the boilerplate language makes the 2002 denial ambiguous, "the specific reservation of future rights should control over the general language concerning loss of rights to compensation," invoking ORS 174.020(2) (in construing statutes, "[w]hen a general and particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent"). *See also* ORS 42.240 (articulating the same rule in construing an instrument).

In response, employer does not offer an alternative way of interpreting the 2002 denial that would give effect to both provisions. Rather, employer argues, first, that the reconsideration provision did not promise claimant that his claim would be accepted—a straw man argument that we handily reject[9]—and, second, that, even if it is appropriate to apply plaintiff's proposed "interpretive models" to construe the 2002 denial, the reconsideration provision is not more specific than the boilerplate language, because "[t]he former expresses a possibility, while the latter foretells a certain outcome if the option of a timely appeal is not taken."[10]

We agree with claimant. Again, the boilerplate language provides, as pertinent:

> "If you think this denial is not right, within 60 days after you are notified of this denial you must file a letter with the Workers' Compensation Board[.] Your letter must state that you want a hearing[.] * * * If you do not file a request within 60 days, you will lose any right you may have to compensation unless you can show good cause for delay beyond 60 days. After 180 days, all your rights will be lost."

---

[9] Claimant did not below and does not now contend that he is entitled to have his 2010 claim accepted, only that he is entitled to reconsideration of it on the merits.

[10] Employer also contends that there was no evidence that claimant was "induced" by the reconsideration provision to not file a challenge to the 2002 denial. Again, however, that contention misapprehends claimant's argument on review, which requires us to interpret the objective meaning of the provision, not claimant's subjective understanding of it.

And, the reconsideration provision, immediately following the boilerplate, states:

> "If in the future you are diagnosed with a condition that you or your physician believe to be related to this exposure with [employer], your claim will be reconsidered for possible acceptance."

Reading the two together, we agree with claimant that the former could be understood to mean that, because claimant did not timely request a hearing, he lost any compensation rights he had *at the time of the denial*. That is, he lost the right to contest the denial of his claim as it existed at the time, but, solely because of the reconsideration provision, he did not lose the right to have that claim reassessed upon the satisfaction of a *future* condition—that is, the diagnosis of a condition that either claimant or his doctor believed to be related to claimant's 2002 exposure with employer. In other words, although claimant lost any right he had to challenge the denial of his claim based on the facts extant at the time it was issued, if, later, those facts changed in the manner specifically described in the reconsideration provision—that is, if he was later diagnosed with a condition believed to be related to the exposure—he would have the right to have his claim reconsidered. That understanding gives effect to both the boilerplate language and the reconsideration provision.

We also agree with claimant that, even if the denial is ambiguous because of the potentially inconsistent provisions, the reconsideration provision, as the more specific, governs. That rule of construction is appropriate to apply here because, as with the construction of statutes and other legal instruments, our goal here is to discern the intention of the *drafter*—in this case, employer. The reconsideration provision operates as a specific exception to the general rule contained in the boilerplate language that all rights to compensation are lost unless timely challenged; thus, it controls.

At oral argument, employer posited an alternative theory for affirming the board—that, even if the reconsideration provision controls, all it promises is that the claim would be "reconsidered for possible acceptance," and that is what happened: the claim *was* reconsidered in 2010, and, after that reconsideration, it was denied. We reject that theory; denying

the 2010 claim on the basis of claim preclusion utterly negates the chance that the claim could be accepted, thus rendering the promise of "reconsider[ation] for *possible acceptance*" illusory. (Emphasis added.); *cf. Shannon v. Mathers*, 271 Or 148, 152, 531 P2d 705 (1975) (provision giving party unlimited discretion to relieve itself of obligation under contract rendered contract illusory); *Black's Law Dictionary* 370 (9th ed 2009) (defining "illusory contract" as "[a]n agreement in which one party gives as consideration a promise that is so insubstantial as to impose no obligation").

In sum, we conclude that the board erred in upholding the denial of claimant's 2010 claim on the ground that it was precluded by the 2002 denial, because employer expressly reserved in the denial claimant's right to seek reconsideration of his claim in the future if certain conditions were satisfied. Accordingly, we reverse and remand for reconsideration of claimant's 2010 claim on its merits.

Reversed and remanded.