Argued and submitted April 11, reversed and remanded December 21, 2016,
petition for review denied March 30, 2017 (361 Or 311)

In the Matter of the Compensation of
Dennis E. Reynolds, Claimant.

Dennis E. REYNOLDS,
*Petitioner,*

*v.*

USF REDDAWAY, INC. - YRC, INC.,
*Respondent.*

Workers' Compensation Board
1204682; A157147

394 P3d 998

Julene M. Quinn argued the cause and filed the briefs for petitioner.

Daniel J. Sato argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Hadlock, Chief Judge, and Shorr, Judge.

## ARMSTRONG, P. J.

Claimant seeks review of an order of the Workers' Compensation Board holding that his claim for a new/omitted medical condition for an L5-S1 disc herniation is barred by claim preclusion or the "law of the case." Reviewing the board's order for substantial evidence and legal error, ORS 183.482(8)(a), (c), we conclude that the claim is not barred, and we therefore reverse and remand for consideration of the claim's compensability.

Claimant began working for employer as a truck driver in 1989 and injured his back at work on January 28, 2011, when the seat of his truck collapsed as he was sitting down, jarring his low back. An MRI of February 14, 2011, revealed possible causes of claimant's pain:

> "[T]here may be some discogenic material in close apposition to the proximal S1 nerve root. Vague suggestion that the proximal left S1 nerve root may be minimally swollen. Also is some bony spurring centrally and to the left."

Employer's workers' compensation claims processing agent, Gallagher Bassett, accepted a claim for a disabling lumbar strain and processed the claim to closure in March 2011.

On April 1, 2011, based on the recommendation of his physician, claimant requested acceptance of a new/omitted medical condition that he described as a "herniated disc of my L5/S1." But an MRI taken on April 8, 2011, revealed "mild bulging" and "no evidence for disk herniation."[1] Gallagher Bassett denied the claim by a letter of June 3, 2011, stating, "Based on our investigation of this matter your work accident of January 28, 2011, did not compensably result in an L5-S1 disc herniation." Claimant did not seek a hearing, and the denial became final.

In May 2011, claimant began working for a different employer. Beginning in October 2011, claimant's symptoms became worse, and he sought treatment for back pain and pain down his leg and into his foot. An MRI of January 9,

---

[1] The report on the April 8, 2011, MRI stated:

"At L5-S1, there is a mild bulging of the annulus and some posterior left-sided vertebral endplate osteophyte formation. There is no evidence for disk herniation, nerve compression, or for significant spinal stenosis."

2012, identified a "focal left lateral disk protrusion" that had "slightly increased in size and conspicuity" since the April 8, 2011, MRI. Claimant continued treatment with steroid injections.

When the steroid injections did not provide relief, Dr. Hansen, claimant's treating physician, ordered a fourth MRI. That MRI, taken May 15, 2012, was read to show a large disc herniation:

> "Large inferiorly extruded left central disc herniation and L5-S1 with posterior displacement and compression of the left S1 nerve root and mild compression of the left L5 nerve root."

Hansen performed surgery, removing a disc extrusion and a small osteophyte. On July 31, 2012, Hanson signed a form 827 for a new/omitted condition claim for L5-S1 disc herniation. Gallagher Bassett denied the claim in a letter of August 12, 2012, stating, again, "Based on our investigation of this matter your work accident of January 28, 2011, did not compensably result in an L5-S1 disc herniation." Claimant requested a hearing.

In a letter to claimant's counsel in January 2013, Hansen reported his findings based on the surgery and the four MRIs. Hansen opined that, at the time of the work injury of January 28, 2011, claimant had suffered an injury to his L5-S1 disc in the form of a disc displacement or protrusion, which doctors at that time did not diagnose and which resulted in L5 nerve root irritation and lumbar radiculitis.[2] Hansen opined that the disc injury gradually worsened from a displacement and protrusion to a herniation or extrusion, "not by any additional injury or traumatic event, but by an expected natural progression of that injury."

Dr. Yodlowski reviewed the medical record on behalf of Gallagher Bassett. She opined that, although the work injury was the precipitating cause of the need for treatment, there was no L5-S1 disc herniation, and that the cause of

---

[2] Hansen explained, "[M]y impression is that the initial injury was a disc injury on 1/28/11 that caused a lumbar radiculitis that progressed to a lumbar radiculopathy from a worsening of the disc injury to a large disc extrusion, a natural consequence to a disc injury."

claimant's condition was the chronic long-term consequence of degenerative disease.

At the hearing, Gallagher Bassett asserted that claimant's new/omitted condition claim for a disc herniation was barred by claim preclusion because the June 3, 2011, denial of the same condition had become final. An administrative law judge (ALJ) rejected the assertion, finding that claimant's L5-S1 disc condition had worsened since the June 3, 2011, denial. The ALJ further found that the worsening was related to the original injury and determined that the claim was compensable.

The board adopted the ALJ's findings but determined that the claim was barred because it was based on the same "operative facts" as those underlying the June 3, 2011, denial of the initial new/omitted condition claim. In the alternative, the board held that the June 3, 2011, denial established the "law of the case" that there was no causal relationship between the L5-S1 disc herniation and the compensable injury. On judicial review, claimant contends that the board erred in determining that the claim was barred.

We readily reject the board's conclusion that the June 3, 2011, denial constituted the "law of the case." As we recently said in *ILWU, Local 8 v. Port of Portland*, 279 Or App 157, 164, 379 P3d 1167, *rev den*, 360 Or 422 (2016), the law-of-the-case doctrine is preclusive only with respect to a prior ruling or decision of an appellate court as opposed to a trial court or administrative body.

We also reject the board's conclusion that the claim was barred by claim preclusion. The doctrine applies in the workers' compensation context, *Drews v. EBI Companies*, 310 Or 134, 795 P2d 531 (1990), and generally bars relitigation of a claim based on the "same factual transaction" that was or could have been litigated between the parties in a prior proceeding that has reached a final determination. *Casey v. City of Portland*, 277 Or App 574, 372 P3d 571 (2016); *Liberty Northwest Ins. Corp. v. Rector*, 151 Or App 693, 698, 950 P2d 387 (1997); *SAIF v. Hansen*, 126 Or App 662, 664-65, 870 P2d 247 (1994). Oregon takes a "transactional" approach to what constitutes a "claim" for purposes of claim preclusion, meaning that a claim is not defined by the particular form

or proceeding by which relief is sought, but by "'a group of facts which entitled [the claimant] to relief.'" *Drews,* 310 Or at 146 (quoting *Troutman v. Erlandson,* 287 Or 187, 201, 598 P2d 1211 (1979)).

We have had many opportunities to address the application of claim preclusion and its exceptions in the workers' compensation context. One common exception precludes application of the doctrine when the claimant's condition has changed since the prior litigation. For example, in *Kepford v. Weyerhauser Co.,* 77 Or App 363, 366, 713 P2d 625, *rev den,* 300 Or 722 (1986), we held that a change in the claimant's condition and the existence of post-surgical findings concerning the cause of the condition constituted a new set of facts that could not have been litigated in the earlier proceeding. In *Liberty Northwest Ins. Corp. v. Bird,* 99 Or App 560, 564, 783 P3d 33 (1989), *rev den,* 309 Or 645 (1990), we said that a change in an injured worker's condition could constitute a new set of operative facts that previously could not have been litigated and that would prevent application of claim preclusion. *See also Yi v. City of Portland,* 258 Or App 526, 531, 310 P3d 710 (2013) (a change in a claimant's medical condition since a previous denial can constitute a new set of facts that prevent application of claim preclusion); *Rector,* 151 Or App at 698 (recognizing an exception to claim preclusion when the claimant's condition has changed and the facts on which the claim was based could not have been presented earlier).

Here, the board interpreted Hansen's reports to express the opinion, based on his review of the MRIs, that claimant suffered a disc herniation at the time of the January 28, 2011, injury. Hansen's reports make clear his opinion that claimant suffered a "disc injury" on January 28, 2011, and a herniation by the time of the surgery. What is less clear is whether Hansen believed that the disc injury of January 28, 2011, constituted a herniation. Hansen variously described claimant's condition over the two years as a displacement, a protrusion, a herniation, and an extrusion. Reading those reports in their entirety, we disagree with the board's conclusion that Hansen can reasonably be understood to have described a disc herniation as of January 28, 2011; rather, Hansen believed that the disc was injured on

January 28, 2011, and that the herniation developed gradually, appearing definitively as a large extrusion in the MRI of May 2012.

The board acknowledged that claimant's condition had changed since the June 3, 2011, denial—that it had "worsened over time, the evidence of its existence became stronger, and claimant's disability and need for treatment progressed." But, having determined that a disc herniation existed as of January 28, 2011, the board reasoned that, despite any worsening, "the present claim is based on the same operative facts that were put at issue by that denial (causation of the L5-S1 disc herniation by the January 2011 work injury, alleged to have occurred contemporaneously with that injury)." The board reasoned that the deterioration in claimant's condition did not give rise to new "operative facts," but merely provided additional support for proof of the operative facts.[3] In the board's view, the relationship of the L5-S1 disc herniation to the work injury was at issue at the time of the first new/omitted condition claim and was finally resolved against claimant by the denial of June 3, 2011.

Having concluded that the medical evidence does not permit the finding that claimant had a herniation on January 28, 2011, we reach a different conclusion. Although claimant's new/omitted medical condition claim of April 1, 2011, sought compensation for a herniated disc at L5-S1, the medical imaging and medical opinion at that time did not describe a herniated disc. In fact, the MRI report of April 8, 2011, immediately preceding the June 3, 2011, denial, stated affirmatively that there was no evidence of a disc herniation. In contrast, the MRI of May 2012 reflected a large extruded disc herniation. We conclude that that evidence, along with

---

[3] The board explained that

"claimant's present claim does not rest on any 'post-denial' progression of his L5-S1 disc herniation, but rather on the assertion that the January 2011 work injury caused the condition at that time. That causal relationship had been denied in June 2011 by an unappealed denial, and this claim does not present new operative facts."

Contrary to the board's statement, claimant's claim does in fact depend on the assertion that, after the January 28, 2011, injury, "as time went on the damaged disc broke down."

Hansen's reports, reflects a change in claimant's condition that presents a new set of operative facts, and that claimant should have an opportunity to present that evidence to prove that the disc herniation for which he had surgery in May 2012 was caused by the January 28, 2011, work injury.[4]

Because the board determined that the new/omitted medical condition claim was barred, it did not address the compensability of the claim. We therefore reverse the board's order and remand the case for reconsideration.

Reversed and remanded.

---

[4] In light of our conclusion, we do not address claimant's additional contentions that claim preclusion would not apply to the June 3, 2011, denial, because it was not "litigated," or that, as interpreted in *Evangelical Lutheran Good Samaritan Soc. v. Bonham*, 176 Or App 490, 497, 32 P3d 899 (2001), *rev den*, 334 Or 75 (2002), ORS 656.267(1) would bar application of claim preclusion in this case.